2014 CO 74

**The PEOPLE of the State of Colorado,
Plaintiff–Appellant**

v.

**Melissa S. SOTELO, Defendant–Appellee.**

**Supreme Court Case No. 14SA71**

Supreme Court of Colorado.

October 14, 2014

Sstate trooper

Attorneys for Plaintiff–Appellant: Peter A. Weir, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado.

Attorneys for Defendant–Appellee: Douglas K. Wilson, Public Defender, Kelly K. Burgett, Deputy Public Defender, Golden, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 This interlocutory appeal presents the first opportunity for this court to address whether an unauthorized driver of a rental car may have standing to challenge the constitutionality of a search of personal packages within that rental car.

¶ 2 A state trooper pulled over the defendant while she was driving a rental car that she was not authorized to drive. While impounding the car at the rental car company's request, the trooper who stopped her discovered three suspicious gift-wrapped packages, one on the back seat and two in the trunk. At the tow yard, a K–9 police dog alerted the trooper that the trunk contained drugs. The trooper used this positive dog sniff to obtain a warrant, the execution of which revealed 57 pounds of marijuana.

¶ 3 The trial court suppressed this marijuana evidence because the packages had been detained for an unreasonable amount of time—over 90 minutes—before the K–9 alerted and the trooper thus obtained probable cause for the search. The People now challenge the trial court's suppression order, arguing that the defendant did not have standing to contest the detention and search of the packages because she was not authorized to drive the rental car.

¶ 4 We hold that under the totality of the circumstances, the defendant had a legitimate expectation of privacy in the gift-wrapped packages that the trooper detained following her traffic stop. She therefore had standing to contest the search of those packages, even though she was not authorized to drive the rental car. Consequently, we affirm the suppression order.

## I. Facts and Procedural History

¶ 5 On July 18, 2013, a Colorado State Patrol ("CSP") trooper stopped the defendant, Melissa Sotelo, on Interstate 70. The trooper informed Sotelo that she was driving too slowly in the left passing lane without making a left-hand turn or passing other vehicles.

¶ 6 Sotelo was driving a rental car with California license plates and was accompanied by a passenger, Janelle Mireles.[1] During the traffic stop, Sotelo provided the trooper with a Hertz rental agreement indicating that Patrick Schooler had rented the car on July 11, 2013, in Fresno, California, with no additional authorized drivers. The rental agreement provided an estimate of charges based on a return date and time of July 18, 2013, at 10:05 p.m., with extra daily and hourly charges to be assessed if the renter returned the car after that date and

time.[2] The car had not been reported as stolen.

¶ 7 Sotelo acknowledged that she did not know Schooler personally but stated that Mireles had been friends with him for a few months. The trooper contacted Hertz, and a company representative asked him to impound the rental car.

¶ 8 The trooper then questioned Sotelo and Mireles separately. Both women said they were driving from California to Maryland for the weekend to take birthday presents to Sotelo's daughter in Washington, D.C. But they gave varying accounts of the number and duration of stops along the way.

¶ 9 The trooper called for a tow truck and, while awaiting its arrival, conducted a detailed inventory of the car's contents per CSP policy. Among other items, the inventory revealed three gift-wrapped packages. One box on the back seat measured about two-feet by two-feet by two-feet. Two identical-size boxes in the trunk measured about two-feet wide by three-feet long by one-foot tall.

¶ 10 When asked what was in the boxes, Sotelo said that they contained clothes and a microphone or singing machine, a large baby stroller with a car seat, and a baby bath. Mireles provided a similar description. The trooper became suspicious because, in his estimation, the size of the gift-wrapped packages did not match their purported contents. The trooper therefore asked the women for consent to open the gift-wrapped packages. They refused.

¶ 11 Sotelo and Mireles accompanied the rental car to the tow yard. The trooper then allowed them to leave but would not let Sotelo take the packages until a K–9 police dog did a "free air search" around the car. Because no K–9 was immediately available, the trooper had to wait another 90 minutes

1. The record and briefs contain three different spellings of the passenger's last name: Moreles, Mireles, and Mirales. We use the spelling in the police report, which is Mireles.

2. The rental agreement was not part of the trial court record; however, it was included in the record on appeal. The agreement also specified that the renter had an additional two-day period in which to return the car before Hertz could

assess an "overdue administrative fee" if the renter failed to contact the rental company:

> You Are Required To Contact Us To Extend The Rental If The Car Will Not Be Returned By The Due Date On The Rental Record. If The Vehicle Is Overdue By More Than 2 Days, And You Fail To Contact Us, An Overdue Administrative Fee May Be Charged To Offset Our Administrative Efforts And Related Costs.

for a handler to bring one from Greeley. Almost three hours after the initial stop, the K–9 alerted to the trunk of the car, indicating the presence of a controlled substance. Sotelo and Mireles returned after the K–9 conducted its search, at which time the trooper advised them that he was requesting a search warrant. Again, the women left.

¶ 12 After CSP obtained the warrant, it conducted a search exposing that all three boxes simply camouflaged vacuum-sealed bags, the contents of which tested positive for marijuana (57 pounds in total).

¶ 13 When Sotelo returned the next morning to retrieve her belongings, CSP arrested her. The district attorney later charged her with possession with intent to distribute at least 5 pounds, but not more than 100 pounds, of marijuana.

¶ 14 The trial court found that the trooper had probable cause to search the packages after the K–9 alert. Nevertheless, the trial court granted Sotelo's motion to suppress them because CSP detained the packages too long. In reaching its decision, the trial court rejected the People's arguments regarding standing as "inapposite," emphasizing that "[t]he defendant always took the position that the packages were in her possession and were gifts she was taking to her daughter." [3]

¶ 15 Later, in a supplement to its order granting the motion to suppress, the trial court refused to allow the People to introduce additional evidence concerning the car rental (including a copy of the rental car agreement) because "it would do no more than confirm facts which the court has already found to be true."

¶ 16 The People appealed the trial court's suppression order under section 16–12–102(1), C.R.S. (2013), and C.A.R. 4.1. The People ask this court to consider "[w]hether the trial court erred in finding that [the] defendant as the unauthorized driver of a rental car had standing to contest the detention and search of the gift wrapped packages which were in the car."

## II. Analysis

¶ 17 We evaluate for the first time whether the unauthorized driver of a rental car has standing to challenge a search of packages within that rental car. After articulating the applicable standard of review for a suppression order, we discuss standing under the Fourth Amendment. Next, we evaluate this standard in the rental car context and explain that standing exists when a defendant, under the totality of the circumstances, has a legitimate expectation of privacy in the subject of the search—here, the gift-wrapped packages. Applying this legal standard, we agree with the trial court that Sotelo had a legitimate expectation of privacy in the packages, affording her standing to challenge the search and seizure. We therefore affirm the suppression order.

### A. Standard of Review

¶ 18 When reviewing a suppression order, we defer to the trial court's findings of fact if they are supported by competent evidence in the record. *People v. Quezada*, 731 P.2d 730, 732 (Colo. 1987). We review the trial court's legal conclusions de novo and reverse if the trial court applied an erroneous legal standard or came to a conclusion of constitutional law that is not supported by the factual findings. *People v. Syrie*, 101 P.3d 219, 222 (Colo. 2004).

### B. Standing Under the Fourth Amendment

¶ 19 The Fourth Amendment right to be free from unreasonable searches and seizures is a personal right that may not be asserted on another's behalf. *See Perez v. People*, 231 P.3d 957, 960 (Colo. 2010); *see also People v. Juarez*, 770 P.2d 1286, 1289 (Colo. 1989) (explaining that standing exists only when the person challenging the legality of a search or seizure was the "victim" of that search or seizure). Therefore, Sotelo must establish that she has standing to challenge the search of the packages.

---

**3.** The trial court also noted that under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), "there is no right to search packages within the passenger compartment of a vehicle simply because of a traffic stop."

¶ 20 In *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court explained that traditional standing inquiries (such as whether the proponent of a legal right has alleged an "injury in fact" and is asserting his or her own legal rights and interests) are subsumed by substantive law under the Fourth Amendment. The relevant inquiry is whether the disputed search has infringed an interest that the Amendment protects. *Id.* at 140, 99 S.Ct. 421. When a defendant has a legitimate expectation of privacy in the place or property searched, the Amendment is implicated. *Id.* at 143 & n. 12, 99 S.Ct. 421 .

¶ 21 The touchstone of the legitimate-expectation-of-privacy standard is reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *accord People v. Salaz*, 953 P.2d 1275, 1277 (Colo. 1998) (characterizing a reasonable expectation of privacy as "the *sine qua non* of a challenge to the validity of a search and seizure"). First, a person must exhibit an actual, subjective expectation of privacy. Second, society must recognize that expectation as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *accord Hoffman v. People*, 780 P.2d 471, 474 (Colo. 1989); *People v. Oates*, 698 P.2d 811, 814 (Colo. 1985). This court's analysis has focused primarily on the objective component. *See People v. Hillman*, 834 P.2d 1271, 1273 (Colo. 1992); *see also Juarez*, 770 P.2d at 1289 ("Whether an asserted expectation of privacy is 'legitimate' depends on objective factors, not on the individual's subjective expectations."); *People v. Tufts*, 717 P.2d 485, 490 (Colo. 1986) (same).

¶ 22 Ultimately, whether a defendant has a legitimate expectation of privacy at the time of a search depends on the totality of the circumstances. *See People v. Galvadon*, 103 P.3d 923, 930 (Colo. 2005) (explaining that judicial review of Fourth Amendment standing must be a "case-by-case" inquiry that looks to the totality of the circumstances to assess whether a defendant's expectation of privacy was reasonable); *People v. Curtis*, 959 P.2d 434, 437 (Colo. 1998) (stating that "the question is whether the defendant demonstrates a sufficient connection to the areas searched or the items seized based on the totality of the circumstances"); *People v. Shorty*, 731 P.2d 679, 681 (Colo. 1987) (referencing the need to examine "all the facts and circumstances in a particular case"). Yet, the threshold requirement is unwavering: "The only person who can assert the right is a person with a possessory or proprietary interest in the property or premises searched." *Perez*, 231 P.3d at 960.

## C. Rental Car Context

¶ 23 We now apply these governing principles to the search and seizure of packages in a rental car with an unauthorized driver. We are mindful not to conflate standing to contest the search of the rental car itself with standing to contest the search and seizure of packages within the rental car. *See generally* 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 11.3(e), at 257–59 & n.325 (5th ed. 2013); *Forty–Third Annual Review of Criminal Procedure*, 43 Geo. L.J. Ann. Rev. Crim. Proc. 119–20 & nn. 274–75 (2014). They are two different inquiries.

¶ 24 This case requires us to address only whether an unauthorized driver of a rental car may have standing to challenge a search of packages within the rental car, regardless of whether the driver has standing to challenge the search of the rental car itself.[4]

---

4. Although this court has not yet addressed the issue, an overwhelming majority of courts apply a bright-line rule that denies an unauthorized driver standing to challenge a search of a rental vehicle because such a driver cannot have a legitimate expectation of privacy in the vehicle itself. Courts within the Third, Fourth, Fifth, and Tenth Circuits follow this approach. *See, e.g., United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Seeley*, 331 F.3d 471, 472 (5th Cir. 2003) (per curiam); *United States v. Edwards*, 632 F.3d 633, 641 (10th Cir. 2001); *United States v. U.S. Currency Totaling $101,207.00*, No. CV 101–162, 2007 WL 4106262, at *5 (S.D. Ga. Nov. 16, 2007); *see also United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011) (agreeing with the majority position but recognizing that the inquiry must remain fact-

¶ 25 We begin our analysis with *Rakas*. There, the defendants were passengers in a getaway car used to escape a robbery. 439 U.S. at 130, 99 S.Ct. 421. Although they did not own or lease the car, the defendants challenged the legality of a search and seizure of both the car and its contents. *Id.* at 148–49, 99 S.Ct. 421. They did not, however, assert a possessory or proprietary interest in the car or the property seized. *Id.* at 148, 99 S.Ct. 421. Consequently, the Court concluded that they did not have "a legitimate expectation of privacy" and were not entitled to challenge the search of either the car or the property within the car (namely, a sawed-off rifle and rifle shells). *Id.* at 148–50, 99 S.Ct. 421. The Court also rejected the defendants' assertion that they had standing because they were legitimately present in the car, driven by the owner:

> [T]he phrase "legitimately on premises" has not been shown to be an easily applicable measure of Fourth Amendment rights so much as it has proved to be simply a label placed by the courts on results which have not been subjected to careful analysis. *We would not wish to be understood as saying that legitimate presence on the premises [here, the car] is irrelevant to one's expectation of privacy, but it cannot be deemed controlling.*

*Id.* at 147–48, 99 S.Ct. 421 (emphasis added).

¶ 26 This court swiftly followed suit and implemented the legitimate-expectation-of-privacy standard enunciated in *Rakas. See People v. Suttles,* 685 P.2d 183, 190 (Colo. 1984). In *Suttles,* we held that, for standing

purposes, "the focus is now on whether the proponent of a motion to suppress had a legitimate expectation of privacy in the area searched *or in the items seized.*" *Id.* (emphasis added); *see also id.* at 190–91 (separately examining whether the defendant had a possessory interest in a car, or a gun or earring seized within the car). Our use of the disjunctive "or" is consistent with our conclusion here that a defendant need not have a legitimate expectation of privacy in a vehicle in order to have one in the property within it.

¶ 27 So how do we evaluate the legitimacy of a privacy interest when the focus is on personal effects, and not a place? *Rakas* instructs that a defendant may show a legitimate expectation of privacy "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." 439 U.S. at 143 n.12, 99 S.Ct. 421.

¶ 28 The Tenth Circuit addressed what this means in *United States v. Edwards,* 632 F.3d 633 (10th Cir. 2001). The defendant in *Edwards* was arrested in connection with a bank robbery. When the police contacted him, the defendant stood near a car rented in his companion's name; he was not listed on the rental agreement as an authorized driver. *Id.* at 636–37. The police searched the car and found a clothing bag in the trunk that contained plastic bags full of stolen currency covered in dye, as well as another bag that contained a mask. *Id.* at 637. The police also found a sweatshirt and shoes belonging

---

bound and that extraordinary circumstances could suggest an expectation of privacy); *United States v. Haywood,* 324 F.3d 514, 516 (7th Cir. 2003) (denying standing without choosing a side in the debate because unauthorized driver was also unlicensed); *United States v. Crisp,* 542 F.Supp.2d 1267, 1276–79 (M.D. Fla. 2008) (noting that the weight of authority supports the conclusion that the unauthorized driver of a rental vehicle does not have a legally cognizable expectation of privacy in that vehicle, but declining to find standing based on the additional fact that the driver was unlicensed), *aff'd,* 355 Fed. Appx. 378 (11th Cir. 2009).

Other courts—including courts within the Sixth, Eighth, and Ninth Circuits as well as some state courts—apply a modified bright-line rule that focuses on whether the renter granted the unauthorized driver of a rental vehicle permis-

sion to drive the vehicle. When the driver establishes "consensual possession," these courts are willing to find that even a driver who is not on the rental agreement can have standing to contest the search of the vehicle. *See, e.g., United States v. Smith,* 263 F.3d 571, 586–87 (6th Cir. 2001); *United States v. Best,* 135 F.3d 1223, 1225 (8th Cir. 1998); *United States v. Thomas,* 447 F.3d 1191, 1197–99 (9th Cir. 2006); *Parker v. State,* 182 S.W.3d 923, 927 (Tex. Crim. App. 2006); *see also United States v. Virden,* 417 F.Supp.2d 1360, 1368 n.8 (M.D. Ga. 2006) (diverging from the trend within the Eleventh Circuit and finding, in a footnote, that unauthorized driver had a legitimate expectation of privacy in rental car because it was procured for him and the lessee gave him permission to use it), *aff'd,* 488 F.3d 1317 (11th Cir. 2007).

to Edwards. *Id.* The district court denied Edwards's motion to suppress this evidence. *Id.* at 641.

¶ 29 On appeal, the Tenth Circuit considered whether Edwards had standing to challenge both the search of the rental car and the search of his bags. *Id.* at 641–42. The court found that Edwards did not have standing to challenge the search of the rental car because he was an unauthorized driver. *Id.* at 641 (citing *United States v. Shareef,* 100 F.3d 1491, 1499–1500 (10th Cir. 1996), and *United States v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir. 1984)). It reached a contrary conclusion with respect to the bags within the rental car. *Id.* at 642.

¶ 30 To explain why it found standing with respect to the bags themselves, the court referenced two cases that found a person can have a legitimate expectation of privacy with respect to the content of luggage within another person's car. In *Arkansas v. Sanders,* 442 U.S. 753, 761 n.8, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), *abrogated on other grounds by California v. Acevedo,* 500 U.S. 565, 579, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Supreme Court held that the defendant unquestionably had standing to challenge a search where there was no dispute that he owned the luggage in question. Likewise, in *United States v. Buchner,* 7 F.3d 1149, 1154 (5th Cir. 1993), the Fifth Circuit held that "[t]he owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase." Testimony by the defendant asserting an ownership interest in a shoulder bag sufficed to confer standing. *Id.*

¶ 31 Considering the totality of the circumstances, the court found that Edwards did have a subjective expectation of privacy in the bags and that society would recognize this expectation as reasonable. The bags were closed and stored in the trunk. Also, they contained clothing and toiletries in addition to contraband. *Edwards,* 632 F.3d at 642. Therefore, the court held that the evidence seized from the rental car should have been suppressed. *Id.* at 641.[5]

■ ¶ 32 We agree with the Tenth Circuit's approach in *Edwards.* If, considering the totality of the circumstances, an unauthorized driver of a rental car is able to satisfy the subjective and objective prongs of the reasonableness test, the driver has standing to challenge a search of his or her possessions within the rental car.

¶ 33 This approach tracks our precedent. Only "a person with a possessory or proprietary interest in the property *or* premises searched" can assert the right to be free from unlawful searches and seizures.[6] *Perez,*

5. Seven years later, in *United States. v. Worthon,* 520 F.3d 1173 (10th Cir. 2008), the Tenth Circuit again analyzed the reasonableness of a search of bags found within a rental car. There, the court referenced—and reaffirmed—*Edwards.* It once again distinguished between standing to challenge a search of the car itself and standing to challenge a search of its contents—noting that even where the ownership of a vehicle is uncertain, a non-owner driver or passenger "might have standing to challenge a search of the luggage stored in the trunk." *Id.* at 1182 (citing *United States v. Martinez,* 983 F.2d 968, 973 (10th Cir. 1992)). Ultimately, it concluded that the defendants in *Worthon* had not established a legitimate expectation of privacy in the bags seized. *Id.* at 1182–83. Their subjective expectation of privacy was "not as well-defined" as in *Edwards* because the bags were not locked and were in an open compartment of a van. *Id.* at 1182. Furthermore, one defendant, Romero, disclaimed any ownership in the bags and attributed them instead to his co-defendant, Worthon. *Id.* While Worthon consistently maintained that the bags were his, the court noted that he was

not in " 'lawful possession or custody of the vehicle' " and thus could not have a " 'legitimate expectation of privacy in the invaded place.' " *Id.* at 1183 (quoting *Rakas,* 439 U.S. at 143, 99 S.Ct. 421). In reaching this conclusion, the Tenth Circuit distinguished *Edwards*: "Mr. Worthon also lacks standing to challenge the search because unlike in *Edwards,* there was no authorized driver present." *Id.* To the extent the Tenth Circuit's decision in *Worthon* treats the absence of an authorized driver as dispositive, we disagree. Such an approach would ignore the possibility that an occupant of a vehicle might have a legitimate expectation of privacy as to the contents of the vehicle, even when not "legitimately present" in the vehicle itself. *See Rakas,* 439 U.S. at 148, 99 S.Ct. 421 (legitimate presence is not the controlling consideration).

6. Conversely, an unauthorized driver's failure to assert a property interest in the item seized typically leads to a finding of no standing. *See, e.g., People v. Henry,* 631 P.2d 1122, 1129 (Colo. 1981) (finding no standing where defendant did not assert a property interest in the object

231 P.3d at 960 (emphasis added). Thus, "[t]his court has consistently 'held that the owner or possessor of a sealed container possesses a legitimate expectation of privacy in its contents.'" *Hillman*, 834 P.2d at 1275 n.12 (quoting *Oates*, 698 P.2d at 816). We have also found that travelers generally have a reasonable expectation of privacy in their personal luggage or bags. *People v. Ortega*, 34 P.3d 986, 990 (Colo. 2001) (citing *Bond v. United States*, 529 U.S. 334, 336–37, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (holding that a bus passenger who places his luggage in an overhead bin retains an expectation of privacy)).

¶ 34 In addition, this conclusion comports with well-reasoned case law from other jurisdictions. *See, e.g., Buchner*, 7 F.3d at 1154 (holding that a defendant in his girlfriend's rental car had a legitimate expectation of privacy with respect to the contents of a shoulder bag that he owned, which was within the car, and therefore had standing to contest a search of the bag); *People v. Young*, 363 Ill.App.3d 268, 300 Ill.Dec. 231, 843 N.E.2d 489, 490–92 (2006) (holding that a defendant, who was a passenger in a vehicle that was subjected to an inventory search, did not have a reasonable expectation of privacy in the vehicle because he had no ownership interest, but did have a reasonable expectation of privacy in his closed suitcase in the trunk, which had a tightly wrapped and taped package containing marijuana inside it).

¶ 35 We acknowledge that the Fourth Circuit has been unwilling to recognize an expectation of privacy in a bag within a car when the driver cannot assert a legitimate claim to the car itself. In *United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981), that court stated, with respect to the driver of a stolen car, that "[a] person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of a container, such as a paper bag." It summarily extended that rule to an unauthorized driver of a rental car in *United States v. Wellons*, 32 F.3d 117, 119–20 (4th Cir. 1994). But *Hargrove* involved a stolen car (a fact that the court in *Wellons* did not even try to reconcile). While Sotelo was not an authorized driver, there is no claim that the car was stolen.

¶ 36 Like other courts that have rejected *Wellons*, we conclude that an inflexible, bright-line rule denying standing to contest the search and seizure of packages within a rental car is inappropriate. *See, e.g., State v. Bruski*, 299 Wis.2d 177, 727 N.W.2d 503, 510–11 (2007) (refusing to adopt a bright-line rule that a defendant who does not have a reasonable expectation of privacy in a vehicle cannot have an expectation of privacy relative to his travel case within the vehicle as a matter of law, even if he owns the case).

¶ 37 In summary, binding precedent of both the United States Supreme Court and this court makes clear that a defendant who has a possessory interest in a seized item may have a reasonable expectation of privacy in that property. Reasonableness is assessed based on the totality of the circumstances—not on any single factor. Other courts throughout the country have expounded the same principle.

## III. Application to Sotelo

¶ 38 Applying this precedent, we conclude that the trial court correctly ruled that Sotelo had a legitimate expectation of privacy in the gift-wrapped packages and

---

seized); *Suttles*, 685 P.2d at 191 (same). So does a defendant's disavowal of a property interest in the item seized. *See United States v. Davis*, 430 F.3d 345, 359–60 (6th Cir. 2005) (finding no standing when defendant denied having any association with the evidence seized and had neither a property nor possessory interest in the evidence); *United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002) (finding no standing when defendant denied even knowing whose car he was in and disclaimed any interest in the seized

suitcase); *see also United States v. Sanders*, 130 F.3d 1316, 1318 (8th Cir. 1997) (emphasizing that the Fourth Amendment "does not immunize people who, finding themselves in a compromising situation, voluntarily trade their interest in privacy for a chance to escape incrimination, no matter how unwise that decision may seem in retrospect"). Neither of these circumstances is present here; as the trial court noted, Sotelo definitively asserted a property interest in the packages.

thus had standing to challenge the trooper's search of those packages.

¶ 39 First, Sotelo exhibited an actual, subjective expectation of privacy. She continually asserted that the packages were hers and that she was taking them to her daughter. And, by covering and sealing the packages with wrapping paper, Sotelo showed that she sought to preserve their contents as private. *See Tufts*, 717 P.2d at 490 (finding that the defendants' reasonable expectation of privacy in the contents of a bag supported standing, where the bag was closed when discovered by the detective); *accord Robbins v. California*, 453 U.S. 420, 434 n.3, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (Powell, J., concurring) (noting that whether the defendant took "some significant precaution, such as locking, securely sealing or binding the container, that indicates a desire to prevent the contents from being displayed upon simple mischance" is relevant to reasonableness of expectation of privacy), *overruled on other grounds by United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Broadway*, 580 F.Supp.2d 1179, 1187 (D. Colo. 2008) (finding that the defendant readily met the subjective reasonableness inquiry in light of his efforts to conceal his drugs in his locked apartment in well-wrapped packages).

¶ 40 Second, society would recognize Sotelo's expectation of privacy in the gift-wrapped packages as reasonable. Reasonableness "may be tested against the customs, values and common understandings that confer a sense of privacy upon many of our basic social activities." *Oates*, 698 P.2d at 816; *see also Minnesota v. Carter*, 525 U.S. 83, 101, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (Kennedy, J., concurring) (noting that reasonableness depends upon "what expectations of privacy are traditional and well recognized"). Here, a legitimate expectation of privacy in gift-wrapped packages is consistent with historical notions of privacy. Indeed, the reason packages are gift-wrapped is to conceal their contents.

¶ 41 Of course, we now know that the packages contained marijuana, not birthday gifts. But courts may not use the benefit of hindsight in evaluating application of the Fourth Amendment. *See Acevedo*, 500 U.S. at 599, 111 S.Ct. 1982 ("Neither evidence uncovered in the course of a search nor the scope of the search conducted can be used to provide *post hoc* justification for a search unsupported by probable cause at its inception."); *see, e.g., Grassi v. People*, 2014 CO 12, ¶ 15, 320 P.3d 332, 336 (applying this concept to the fellow officer rule); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 559, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (Brennan, J., dissenting) ("[P]ost hoc rationalizations have no place in our Fourth Amendment jurisprudence, which demands that we 'prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure.'" (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 565, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976))).

¶ 42 Based on the circumstances externally present, these were private packages which Sotelo claimed were gifts for her daughter. These circumstances establish a legitimate expectation of privacy entitling her to challenge the constitutionality of the search of the packages.

## IV. Conclusion

¶ 43 We hold that under the totality of the circumstances, the defendant had a legitimate expectation of privacy in the gift-wrapped packages that the trooper detained following her traffic stop. She therefore had standing to contest the search of those packages, even though she was not authorized to drive the rental car.

¶ 44 We affirm the trial court's suppression order and remand for further proceedings consistent with this opinion.

JUSTICE BOATRIGHT dissents.

JUSTICE BOATRIGHT, dissenting.

¶ 45 The majority looks to the fact that Sotelo asserted ownership over wrapped packages that were inside the rental car she was driving and concludes that she has standing to challenge the search of these items. I believe this analysis is incomplete. As the majority notes, the test that determines standing to challenge a search under

the Fourth Amendment has two prongs, which we evaluate under the totality of the circumstances. The test asks first, whether the defendant had a subjective expectation of privacy, and second, whether society would recognize that expectation as reasonable. This two-pronged inquiry determines whether a defendant had a *legitimate* expectation of privacy in the item searched. I dissent because I believe that the majority ignored the circumstances surrounding Sotelo's assertion of ownership over the packages when it applied its analysis. Hence, in my view, the majority did not consider the totality of the circumstances or fully evaluate the objective reasonableness of Sotelo's expectation of privacy. As such, I respectfully dissent and would instead reverse and remand this case to the trial court for it to re-open the evidence on the issue of standing and then apply the totality of the circumstances test.

¶ 46 While the majority describes the stop and search that occurred in this case, it is important to highlight a few additional facts that are relevant to the totality of the circumstances analysis. As the majority notes, a Colorado State Patrol Trooper stopped Sotelo and her passenger, Mireles, for a traffic violation. During the stop, Sotelo provided the trooper with the rental car agreement. It listed Patrick Schooler as the renter of the vehicle with no additional authorized drivers. The trooper then contacted the rental company, which requested that he impound the car. Sotelo admitted to the trooper that she did not know the person who rented the vehicle—in fact, she knew only that his first name was Patrick—but she claimed that Mireles was friends with him. Mireles told the trooper that she had known Schooler for a few months, though neither she nor Sotelo could provide the trooper with a phone number for Schooler.

¶ 47 Sotelo told the trooper that she and Mireles were driving to Maryland for the weekend to take presents to Sotelo's daughter and that they had stopped in Vineland, California to see family. Mireles, however, told the trooper that their only overnight stop had been in Nevada. When the trooper asked Sotelo what was inside the wrapped packages in the car, she stated that she was

"pretty sure" that one package contained clothes and a microphone or singing machine, one package contained a large baby stroller with a car seat, and one package contained a baby bath. Three facts led the trooper to suspect that Sotelo and Mireles were actually transporting drugs: (1) based upon his training and experience, the trooper did not believe that the boxes in the car were of the correct size or shape to hold the contents Sotelo described, (2) both Sotelo and Mireles were unauthorized to drive the car and were not familiar with Schooler, and (3) Sotelo and Mireles gave inconsistent stories about the trip. As the majority details, a K–9 arrived just under three hours later and alerted on the trunk of the car. Based on these facts, the trooper obtained a search warrant for the packages, and upon opening them, found vacuum-sealed bags of marijuana.

¶ 48 As a result, the People charged Sotelo with possession with intent to distribute marijuana. The defense filed a motion to suppress the marijuana evidence, arguing that the affidavit for the search warrant was not supported by probable cause and that it contained false statements. At the motions hearing, both parties acknowledged that the defense would file an additional motion challenging the search at a later time. But in an effort to handle the case expeditiously, the court and the parties agreed to go forward with evidence at that time, with the understanding that the People could later supplement the record and introduce additional evidence if necessary. Subsequent to the motions hearing, the defense filed another motion challenging the search, this time asserting that the police detained the packages for an excessive amount of time.

¶ 49 The People then filed a motion, captioned "People's Motion to Supplement Record Plus Argument on the Search Issue," in which they requested to supplement the record and introduce the rental car agreement. The court denied the motion on the ground that the prosecution had no need for the evidence because Sotelo's status as an unauthorized driver had already been established. According to the People's motion, however, the rental agreement had relevance beyond demonstrating that Sotelo was an unautho-

rized driver. The agreement also established that the car, by contract, had to be returned to California only hours after Sotelo was pulled over in Colorado—at which time she admitted that she was taking the car to the Washington, D.C. area for the weekend. Thus, the rental agreement suggested that Sotelo went beyond being merely an unauthorized driver.

¶ 50 In my view, the facts surrounding Sotelo's legal status with respect to the car are relevant to the determination of whether society would recognize her expectation of privacy as reasonable, and also to the credibility of Sotelo's assertion of ownership over the packages. As such, the majority should consider these facts in the analysis. Unfortunately, the trial court did not allow the prosecution to re-open the evidence and introduce the rental agreement, so neither the prosecution nor the defense was given the opportunity to develop this evidence. Therefore, in my opinion, the case should be remanded to allow both parties to address this evidence.

### I. Analysis

¶ 51 To explain my position, I begin with a brief analysis of the Fourth Amendment and principles of standing. Then, I examine the majority's reliance on case law and explain why it is misplaced. Finally, I conclude with a totality of the circumstances analysis and recommend reversal and a remand to the trial court.

### A. Standing Under the Fourth Amendment

¶ 52 The Fourth Amendment provides individuals with a right to be free from unreasonable searches and seizures. For the Fourth Amendment to protect an individual, that individual must establish that she had a legitimate expectation of privacy in the invaded place. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). This requires a dual showing: first, that the individual had a subjective expectation of privacy, and second, that society would recognize that expectation as reasonable. *United States v.*

*Mitchell*, No. 92–4120, 1994 WL 55597, at *2 (10th Cir. Feb. 23, 1994) (explaining the legitimate expectation of privacy test and stating that it is often met by showing ownership or lawful possession). In analyzing whether an individual's expectation of privacy is reasonable, the court must consider the totality of the circumstances, including the defendant's ownership, lawful possession, or lawful control of the place searched. *United States v. Abreu*, 935 F.2d 1130, 1133 (10th Cir. 1991). The defendant's wrongful presence on the premises is also a factor that is relevant to the inquiry. *Rakas*, 439 U.S. at 141 n.9, 99 S.Ct. 421 (reaffirming the statement in *Jones v. United States*, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), that individuals, "by virtue of their wrongful presence, cannot invoke the privacy of the premises searched" and chastising lower courts for "inexplicably" holding that a person in a stolen car could have standing to object to the search of the car).

¶ 53 I would emphasize that in determining the objective reasonableness of an individual's expectation of privacy in her personal items, where those items were found has been relevant to the analysis for at least three decades. The Supreme Court illustrated this point in *Rawlings v. Kentucky*, 448 U.S. 98, 105, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), where it held that the defendant did not have standing to challenge the search of his companion's purse even though the defendant had placed his drugs in the purse earlier that day. Specifically, the Court concluded that even though the defendant claimed ownership of the drugs, he lacked standing because he had no legitimate expectation of privacy in the purse where the police found the drugs. *Id.* In this case, therefore, it is my position that the court must consider whether Sotelo had a legitimate expectation of privacy in the rental car as part of the totality of the circumstances analysis. The majority, however, ignores the status of the vehicle in which the packages were found.

### B. Standing for Unauthorized Drivers with No Legitimate Renter Present

¶ 54 In reaching its conclusion that the defendant had standing in this case, the ma-

jority relies on *United States v. Edwards,* 632 F.3d 633 (10th Cir. 2001). As the majority notes, *Edwards* held that an unauthorized driver had standing to challenge the search of his bags within a car. *Id.* at 642. *Edwards* is distinguishable from the present case, however, because the defendant in *Edwards* was accompanied by the legitimate renter of the vehicle. *United States v. Worthon,* 520 F.3d 1173, 1183 (10th Cir. 2008). In situations like the one in this case, where a legitimate renter of the car was not present, the Tenth Circuit has made clear that *Edwards* does not apply. *Id.* ("Mr. Worthon also lacks standing to challenge the search [of his duffel bags] because unlike in *Edwards,* there was no authorized driver present.... Because he was not in lawful possession or custody of the vehicle, he can have no legitimate expectation of privacy in the invaded place.") (citations omitted). While the majority is not persuaded by *Worthon*'s explicit statement that *Edwards* does not apply to cases in which a legitimate renter is not present, in my view, the distinction articulated in *Worthon* is sound. Thus, I do not find *Edwards* persuasive.[1]

¶ 55 An additional problem with relying on *Edwards* is that the court in *Edwards* used the contents of the defendant's bag as part of its rationale for finding that the defendant had standing. *Edwards,* 632 F.3d at 642 ("[*Edwards's* bags] contained items such as clothing and toiletries in addition to the contraband seized by the police, and were being used to transport Edwards' personal belongings while traveling.... We therefore find that Edwards has standing to challenge the search of his personal luggage contained within the trunk of the rental vehicle."). As the majority notes, it is inappropriate to use hindsight for justification in the Fourth Amendment context. Maj. op. ¶ 41.

¶ 56 By contrast, another Tenth Circuit case, *Worthon,* is directly on point and does not rely upon the contents of the item searched in its standing analysis. In *Worthon,* the Tenth Circuit considered the precise issue in this case: whether unauthorized drivers who are *not* accompanied by a legitimate renter of the vehicle have standing to challenge the search of their personal belongings within the car. 520 F.3d at 1182. In that case, where a legitimate renter of the vehicle was not present, the court found that the defendant did not have standing to challenge the search of his personal belongings within the car. *Id.* at 1183.

¶ 57 In *Worthon,* a highway patrol trooper stopped the defendant, Myron Worthon, after he committed a traffic violation. *Id.* at 1176–77. The trooper obtained the rental papers for the van Worthon was driving and saw that the van was rented under another person's name and that the rental agreement did not list any additional authorized drivers. *Id.* at 1177. When another trooper contacted the rental company, the company requested that the troopers impound the van because the registered driver was not present. *Id.* One of the troopers asked Worthon whether the contents of the van were his, and Worthon responded that they were. *Id.* Because the van was going to be impounded, the trooper offered to take Worthon, his passenger, and Worthon's belongings into town. *Id.* When Worthon agreed, the trooper checked one of several military duffle bags in the van to be sure that there was nothing dangerous inside it before he put the bags in his patrol car. *Id.* He grabbed one

---

1. The other cases cited by the majority are similarly distinguishable in that they, like *Edwards,* do not involve an unauthorized driver who was not accompanied by a legitimate renter of the vehicle. *See, e.g., Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (defendant owned the car in question); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (defendant was legitimately present in taxicab); *United States v. Buchner,* 7 F.3d 1149 (5th Cir. 1993) (defendant's bag was found in an empty car rented to defendant's girlfriend; it is unclear whether the girlfriend was present at the time of the search); *United States v. Broadway,* 580 F.Supp.2d 1179 (D. Colo. 2008) (defendant rented the apartment in which packages were found); *People v. Ortega,* 34 P.3d 986 (Colo. 2001) (defendant was legitimately present in a Greyhound bus); *People v. Hillman,* 834 P.2d 1271 (Colo. 1992) (issue was the search of the defendant's trash he left out on his driveway); *People v. Tufts,* 717 P.2d 485 (Colo. 1986) (defendant had permission from the owner of the car to drive the vehicle); *People v. Young,* 363 Ill. App.3d 268, 300 Ill.Dec. 231, 843 N.E.2d 489 (2006) (defendant was a passenger in a car that the legitimate owner was driving).

of the duffle bags and immediately felt a large, square block that he believed, based on his training and experience, to be drugs. *Id.* Upon searching the duffle bags, the troopers discovered 245 pounds of marijuana. *Id.*

¶ 58 At a motions hearing, Worthon challenged the search of his duffle bags, but the trial court found that he lacked standing. *United States v. Romero,* Nos. 06–10072–01–JTM, 06–10072–03–JTM, 2006 WL 2663124, at *2 (D.Kan. Sept. 15, 2006). The Tenth Circuit affirmed the lower court on appeal, concluding that Worthon, as an unauthorized driver with no legitimate renter present, could not establish that he was in lawful possession or custody of the vehicle. 520 F.3d at 1183 (quoting *United States v. Roper,* 918 F.2d 885, 887 (10th Cir. 1990)) ("Mr. Worthon 'was driving a rented vehicle and was not named on the rental agreement or any other documents.... [He] made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately.'"). Thus, the court found that Worthon could not have a legitimate expectation of privacy in the invaded place and held that he lacked standing to challenge the search of his bags. *Id.*

¶ 59 That court's heavy reliance on the status of the driver demonstrates how significant this factor is to resolving the question before us. In fact, the Tenth Circuit in *Worthon* hardly relied on anything *but* the unauthorized status to find that the driver lacked a legitimate expectation of privacy in his personal items within the car. That said, I am not advocating that we adopt a bright-line test where an unauthorized driver without a legitimate renter present could never have standing to challenge the search of her personal items within the car. Instead, I would simply assert that the court must consider the fact that Sotelo was without any apparent authority to possess the car when it evaluates her standing.

## C. Application to Sotelo

¶ 60 As *Worthon* illustrates, the status of the driver is an important factor to consider when analyzing the standing question that we are presented with in this case. Addi-

tional facts in Sotelo's case, however, make the status of the driver even more relevant to the analysis, particularly under the second prong of the test for standing. The proffered evidence from the prosecution suggests that not only was Sotelo driving the car without authorization and without a legitimate renter present, she also had no intention of returning the rental car to California by the time it was due that evening. The rental contract, which the trial court refused to allow into evidence, establishes that the car Sotelo was driving had to be returned to Fresno, California at 8:05 p.m. on the same day that she was pulled over in Colorado at 2:23 p.m. The distance between Colorado and California alone would have made it impossible for Sotelo to return the car to California on time that evening. Sotelo, however, had no intention of attempting to return the car by its due date. By her own admission, she was taking the car to the Washington, D.C. area for the weekend.

¶ 61 Considering these facts, Sotelo's status appears to have been somewhere in between being an unauthorized driver and being the driver of a stolen vehicle. This is significant because courts look with additional skepticism at claims that a driver of a stolen vehicle had a reasonable expectation of privacy in her personal items within the car. *United States v. White,* 504 Fed.Appx. 168, 172 (3d Cir. 2012) (finding that the defendant lacked standing to challenge the search of his backpack and his locked box that police found inside the stolen car he was driving); *United States v. Hargrove,* 647 F.2d 411, 412 (4th Cir. 1981) ("A person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of a container...."); *United States. v. Goldstein,* No. 2:10–cr–00525–JAD–PAL, 2013 WL 5408265, at *3 (D.Nev. Sept. 25, 2013); *see also United States v. Caymen,* 404 F.3d 1196, 1200 (9th Cir. 2005) (finding that the defendant had no legitimate expectation of privacy in the contents of a computer he fraudulently obtained because even if he had a subjective expectation of privacy in the contents, "such

an expectation is not one that 'society is prepared to accept as reasonable' ").

¶ 62 As these cases illustrate, the amount of privacy a person can reasonably expect in items within a car depends, in part, on how she acquired possession of the vehicle. Thus, while I agree with the majority that Sotelo's claim of ownership over the packages is a fact that the court must consider, her claim of ownership alone is not sufficient. As discussed above, it is a two-part test that determines whether an individual had a legitimate expectation of privacy in the item searched. Under the first prong, where we consider whether the defendant had a subjective expectation of privacy, it is highly relevant that Sotelo asserted ownership over the packages. My concern, however, is that the majority did not sufficiently examine the facts under the second prong, which asks whether society would recognize her expectation of privacy as reasonable.

¶ 63 When evaluating the objective reasonableness of Sotelo's expectation of privacy under the second prong, evidence in addition to her claim of ownership over the packages needs to be considered. Moreover, Sotelo's assertion of ownership itself warrants scrutiny under the objective reasonableness prong because the description she gave of the packages' contents did not match up to the size and shape of the boxes.[2] Even more important, however, is Sotelo's legal status with respect to the car. Here, Sotelo was driving a rental car without the legitimate renter present. She admitted that she did not even know the legitimate renter's last name, and despite both women having cell phones, neither Sotelo nor Mireles could provide a phone number for Schooler. Their inability to produce Schooler's contact information, despite having two cell phones between them, calls into question the truthfulness of Sotelo's claim that Mireles was Schooler's friend and that they had permission to use the car. The trooper, in fact, cited their lack of familiarity with Schooler as part of his basis for believing the women were engaged in criminal activity. Rather than relying on

Sotelo's bare assertion, therefore, I believe we must consider these facts surrounding her statement if we are to make a proper determination about the objective reasonableness of her claim of privacy in the packages. The terms of the rental agreement, discussed above, have a similar effect on the analysis under prong two because they suggest that Sotelo went beyond being an unauthorized driver. All of these facts impact whether society would recognize Sotelo's expectation of privacy as reasonable, and they should be considered when the court applies the two-pronged test to evaluate her standing.

## II. Conclusion

¶ 64 The trial court focused solely on the fact that the defendant claimed the packages were hers, and while the majority claims to have applied a totality of the circumstances test, it ignored the status of the car and the other relevant circumstances and focused instead on two facts: that Sotelo claimed ownership of the packages and that the packages were gift-wrapped. I do not believe that the majority, through this analysis, considered the totality of the circumstances or fully evaluated the objective reasonableness of Sotelo's expectation of privacy in the packages. Thus, I would reverse the trial court and remand this case to that court with directions for it to re-open the evidence on the issue of standing and then apply the totality of the circumstances test. Hence, I respectfully dissent.

---

2. The majority also suggests that Sotelo "cover[ed] and seal[ed] the packages with wrapping paper." *See* Maj. op. ¶ 39. That conclusion is unsupported by the record. Furthermore, So-telo's statement that she was "pretty sure" she knew what was inside the boxes belies that inference.