2015 CO 59

The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Ivan **QUINTERO–AMADOR,**
Defendant–Appellee

**Supreme Court Case No. 15SA92**

Supreme Court of Colorado.

October 13, 2015

Attorneys for Plaintiff–Appellant: George H. Brauchler, District Attorney, Eighteenth Judicial District Jennifer Gilbert, Deputy District Attorney, Centennial, Colorado.

Attorneys for Defendant–Appellee: Douglas K. Wilson, Public Defender Erik Johnson, Deputy Public Defender, Centennial, Colorado.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the People challenge an order suppressing at retrial the testimony given by defendant, Ivan Quintero–Amador, at his first trial. We conclude that the court erred in suppressing this evidence because (1) Quintero–Amador knowingly, voluntarily, and intelligently waived his Fifth Amendment rights when he testified at his first trial; and (2) his trial counsel's ineffective assistance did not directly affect his prior testimony, thus precluding a finding that the admission of this testimony would violate his Sixth Amendment rights. Accordingly, we reverse the trial court's suppression order and return this case to that court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2 Quintero–Amador was charged with assault, menacing, criminal trespass, and a crime of violence. The charges were based on an incident in which Quintero–Amador allegedly drove into an apartment building's parking lot, used his car to block the victim's truck, opened the truck's door, and beat the victim with a baseball bat.

¶3 At trial, the court gave Quintero–Amador a detailed advisement pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984), regarding his right to testify. After receiving this advisement and consulting with his counsel, Quintero–Amador chose to testify, albeit against his counsel's advice. He did so because he was adamant that he had not done what he was accused of doing, and he believed that he could convince the jury of his innocence. The trial court found that Quintero–Amador's decision to testify was made knowingly, voluntarily, and intelligently.

¶4 In his testimony, Quintero–Amador denied striking the victim with a baseball bat, but he admitted being involved in a confrontation with the victim in the parking lot on the morning of the alleged assault. He further testified that he had previously lived in the apartment complex at which the assault occurred and that he was familiar with some of the buildings and the parking lot there.

¶5 Quintero–Amador was convicted as charged. Thereafter, through new counsel, he filed a motion for a new trial, alleging, among other things, the ineffective assistance of trial counsel. In this motion, he contended that trial counsel was constitutionally ineffective because he (1) conducted no investigation; (2) failed to review critical pieces of discovery; (3) conducted ineffective cross-examinations that actually furthered the prosecution's theory of the case; (4) failed to make obvious and basic objections; and (5) was deficient in opening statement, closing argument, voir dire, and motions practice. Although in his motion, Quintero–Amador generally stated that he "should never have testified," he did not assert that counsel's ineffective assistance caused him to do so. Nor did he contend that counsel's ineffective assistance directly affected any portion of his testimony. Indeed, it was undisputed that trial counsel had advised him *not* to testify. Moreover, at the hearing on the new trial motion, trial counsel testified, and Quintero–Amador does not dispute, that he "was fairly adamant that he wanted to testify."

¶6 The trial court granted the new trial motion. In doing so, the court found that trial counsel (1) had conducted no investigation of the case, (2) had no "demonstrable exhibits" and no expert testimony or evidence to support his impossibility theory of defense, (3) did not listen to or introduce a potentially impeaching 911 call by the victim's wife, (4) did not impeach the police witnesses with their preliminary hearing testimony, (5) called no alibi witnesses despite an alleged alibi, and (6) did not object to questions to police officers about whether Quintero–Amador or other witnesses had testified truthfully. The court then observed that as a result of the foregoing, Quintero–Amador took the stand without understanding that his testimony could undermine his credibility and theories of defense. Although in the court's view none of the above-referenced deficiencies, standing alone, would have called the result of the proceeding into question, when taken together, these deficiencies established a "probability that [was] sufficient to undermine the confidence in the outcome of the proceeding."

¶7 Thereafter, the trial court set the case for retrial. Prior to the retrial, Quintero–Amador moved to suppress the testimony that he gave at his first trial, arguing that its admission would violate his Fifth Amendment right to remain silent and his Sixth Amendment right to the effective assistance of counsel.

¶8 The court, acting through a different judge from the judge who had presided at the earlier trial, noted that the original trial judge had found that trial counsel's performance was deficient "across the board." In those circumstances, the court concluded that Quintero–Amador's waiver of his Fifth Amendment rights had not been knowing, voluntary, and intelligent. The court thus granted Quintero–Amador's motion to suppress his testimony from the first trial, stat-

ing, "It is the appropriate, just, fair, due process, constitutional, but legal ruling."

¶ 9 The People now bring this interlocutory appeal pursuant to C.A.R. 4.1(a).

## II. Jurisdiction

¶ 10 As a preliminary matter, we conclude that we have jurisdiction over this appeal.

¶ 11 C.A.R. 4.1(a) provides, in pertinent part, "The state may file an interlocutory appeal in the Supreme Court from a ruling of a district court granting a motion under Crim. P. 41(e) and (g) . . . made in advance of trial by the defendant . . . to suppress evidence or granting a motion to suppress an extra-judicial confession or admission." Accord § 16–12–102(2), C.R.S. (2015); see also People v. Smith, 254 P.3d 1158, 1160 (Colo. 2011) (noting that C.A.R. 4.1(a) vests this court with jurisdiction to hear interlocutory appeals of, among other things, the suppression of an involuntary confession or admission pursuant to Crim. P. 41(g)).

¶ 12 Crim. P. 41(g), in turn, provides, in pertinent part, "A defendant aggrieved by an alleged involuntary confession or admission made by him, may make a motion under this Rule to suppress said confession or admission." This rule, however, is limited to motions to suppress evidence based on constitutional, but not statutory, violations. People v. Cowart, 244 P.3d 1199, 1207 (Colo. 2010) (noting that each of the grounds enumerated in Crim. P. 41(g) is premised on constitutional rights).

¶ 13 Here, although Quintero–Amador's motion to suppress did not cite Crim. P. 41(g), in substance it was a Crim. P. 41(g) motion because it sought to suppress admissions that Quintero–Amador had made at his previous trial and the motion was based on alleged violations of his constitutional rights. Accordingly, we have jurisdiction over this interlocutory appeal. See id. (concluding that this court had jurisdiction over a C.A.R. 4.1(a) interlocutory appeal when the trial court's prohibition of certain testimony could only have been viewed as an order, pursuant to Crim. P. 41(g), suppressing evidence for violations of the defendant's Fifth and Sixth Amendment rights).

¶ 14 We are not persuaded otherwise by Quintero–Amador's argument that because his prior testimony occurred in court, it was not an "extra-judicial" confession or admission. Rather, we agree with the People that under C.A.R. 4.1(a), a confession or admission is "extra-judicial" when it is made outside of the trial at which it is offered. See People v. Vigil, 127 P.3d 916, 921 (Colo.2006) (referring to "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions"); People v. Allen, 973 P.2d 620, 622 (Colo.1999) ("[P]rocedural due process rights include a defendant's right to testify in some extrajudicial proceedings like probation and parole revocation.").

## III. Standard of Review

¶ 15 When reviewing a suppression order, we defer to the trial court's factual findings if they are supported by competent evidence in the record. People v. Sotelo, 2014 CO 74, ¶ 18, 336 P.3d 188, 191. "We review the trial court's legal conclusions de novo and reverse if the trial court applied an erroneous legal standard or came to a conclusion of constitutional law that is not supported by the factual findings." Id.

## IV. Analysis

### A. Fifth Amendment

¶ 16 The People contend that the trial court erred in suppressing Quintero–Amador's prior testimony under the Fifth Amendment. They contend that Quintero–Amador waived his Fifth Amendment rights voluntarily, knowingly, and intelligently. We agree.

¶ 17 As an initial matter, we question whether Quintero–Amador even asserted a Fifth Amendment claim, as opposed to his Sixth Amendment claim alleging the ineffective assistance of counsel. Assuming without deciding that he did, however, we agree with the People that he waived his Fifth Amendment rights voluntarily, knowingly, and intelligently.

¶ 18 "[T]he constitutional right to testify in one's own defense is so inherently

personal and basic that it can be waived only by the defendant and not by his attorney and that to be effective the waiver must be made voluntarily, knowingly and intelligently." *People v. Mozee*, 723 P.2d 117, 123 (Colo. 1986). For the waiver to be knowing, voluntary, and intelligent, the defendant must know that he has the right to testify, the consequences of testifying, and that he may take the stand notwithstanding the contrary advice of counsel. *See id.* at 122.

¶ 19 To safeguard the knowing, voluntary, and intelligent nature of a defendant's understanding of the right to testify, a trial court ordinarily should provide a *Curtis* advisement. *Moore v. People*, 2014 CO 8, ¶ 19, 318 P.3d 511, 518. This advisement informs the defendant that (1) the defendant has a right to testify; (2) if the defendant wants to testify, no one can prevent him or her from doing so; (3) if the defendant testifies, then the prosecution will be allowed to cross-examine him or her; (4) if the defendant has been convicted of a felony, the prosecutor will be entitled to ask about it and thereby disclose it to the jury; and (5) if a felony conviction is disclosed to the jury, then the jury can be instructed to consider it only as it bears on the defendant's credibility. *Id.* at ¶ 10, 318 P.3d at 516.

¶ 20 Here, at the first trial, the trial court gave Quintero–Amador a detailed *Curtis* advisement. Quintero–Amador assured the court that he understood his rights, and the record establishes that he adamantly wanted to testify, against the advice of his trial counsel. In light of the foregoing, the trial court found, with ample record support, that Quintero–Amador's decision to testify was voluntary, knowing, and intelligent.

¶ 21 On the record before us, we agree with this determination and thus conclude that Quintero–Amador voluntarily, knowingly, and intelligently waived his Fifth Amendment rights when he testified at his first trial. Accordingly, we further conclude that the trial court erred in suppressing Quintero–Amador's prior testimony on Fifth Amendment grounds.

## B. Sixth Amendment

¶ 22 The People also contend that the trial court erred in suppressing Quintero–Amador's prior trial testimony on Sixth Amendment grounds. Again, we agree.

¶ 23 To obtain relief on an ineffective assistance of counsel claim, a defendant generally must satisfy the two-prong test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by Colorado courts. *See, e.g., People v. Cole*, 775 P.2d 551, 554 (Colo.1989). Under *Strickland's* two-prong test, a defendant is required

> to demonstrate first, that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," and second, that he suffered prejudice from his counsel's ineffectiveness, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* (quoting *Strickland*, 466 U.S. at 690, 694, 104 S.Ct. 2052).

¶ 24 The People contend that suppression is a remedy for improper state action, not ineffective assistance of counsel, and thus, the trial court erred in excluding Quintero–Amador's prior testimony here. As Quintero–Amador correctly observes, however, a number of courts across the country have suppressed a defendant's prior testimony based on counsel's ineffective assistance, even absent state action, "when counsel's ineffectiveness directly affect[ed] the defendant's testimony and thereby taint[ed] the entire trial." *Rolon v. State*, 72 So.3d 238, 245 (Fla.Dist.Ct.App.2011); *see also United States v. Murray*, 52 M.J. 671, 674–75 (N–M.Ct.Crim.App.2000) (concluding that the appellant's prior testimony was involuntary and thus inadmissible in a subsequent proceeding when the appellant had testified "as a direct consequence of the ineffective assistance" of his counsel and his testimony was "the direct result of the denial of [his] Sixth Amendment right to the effective assistance of counsel").

¶ 25 For purposes here, we need not decide whether to adopt the "direct effect" standard employed by these cases. Assuming without deciding that this standard applies, for three reasons, we conclude that trial counsel's ineffective assistance did not directly affect Quintero–Amador's prior trial testimony.

¶ 26 First, as noted above, in ruling on Quintero–Amador's new trial motion, the trial court specifically concluded that counsel's failure to prepare Quintero–Amador to testify, standing alone, did not constitute ineffective assistance.

¶ 27 Second, in moving for a new trial, Quintero–Amador did not allege that he would not have testified but for his counsel's deficient conduct. To the contrary, it is undisputed that his counsel had advised him not to testify, and the record establishes that he was "adamant" that he wanted to testify because he believed that he could persuade the jury of his innocence. Accordingly, the evidence does not support a finding that counsel's ineffective assistance directly affected Quintero–Amador's prior testimony. *See Murray*, 52 M.J. at 674–75; *Rolon*, 72 So.3d at 245; *see also People v. Gardner*, 122 Mich.App. 20, 329 N.W.2d 518, 520 (1982) (rejecting the defendant's claim that, due to his trial counsel's ineffective assistance, admitting his testimony from a prior trial was reversible error, when the defendant did not claim that his prior testimony had been prompted by counsel's ineffective assistance and the record showed that he had testified in an attempt to convince the jury that he

was guilty of a lesser offense than had been charged).

¶ 28 Third, although the record supports the trial court's finding that trial counsel's conduct was deficient in numerous respects, Quintero–Amador's general allegations of ineffective assistance and of deficient conduct by counsel that was unrelated to Quintero–Amador's decision to testify do not establish the direct effect on his testimony that would, at a minimum, be necessary to justify suppression of that testimony. *See id.* at 519–20 (concluding that a defendant's testimony from his first trial was admissible in a second trial, notwithstanding reversal of the first trial's judgment due to the ineffective assistance of trial counsel, when counsel's ineffective assistance did not taint the prior testimony).

¶ 29 Accordingly, we conclude that the trial court erred in suppressing Quintero–Amador's prior trial testimony on Sixth Amendment grounds.

## V. Conclusion

¶ 30 For these reasons, the trial court's order suppressing Quintero–Amador's prior trial testimony is reversed, and we return this case to that court for further proceedings consistent with this opinion.