2015 CO 67

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**John Mikall Paul SWIETLICKI, Defendant–Appellee.**

**Supreme Court Case No. 15SA129**

Supreme Court of Colorado.

November 23, 2015

Attorneys for Plaintiff–Appellant: George H. Brauchler, District Attorney, Eighteenth Judicial District, L. Andrew Cooper, Chief Deputy District Attorney, Centennial, Colorado.

Attorneys for Defendant–Appellee: Douglas K. Wilson, Public Defender, Matt Mulch, Deputy Public Defender, Castle Rock, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the People challenge the trial court's order suppressing evidence obtained from defendant Swietlicki's laptop computer. Police seized the laptop without a warrant and held it until a search warrant issued, at which time they searched the laptop and found child pornography. Because the seizure was justified under the plain view exception to the warrant requirement, we reverse the suppression order.

## I. Facts and Procedural History

¶ 2 In January 2014, Detective Weaver of the Douglas County Sheriff's Office ("DCSO") responded to a middle school's report regarding J.M., a twelve-year-old female student. School staff had begun questioning J.M. about a Facebook posting of J.M. drinking what seemed to be an alcoholic beverage. They quickly became worried there was more to the situation and contacted police. Upon his arrival, Detective Weaver spoke to J.M. but elicited no additional information. Later that day, J.M.'s mother called the DCSO to say J.M. wanted to talk. During the next two-and-a-half weeks, J.M. and her

mother separately participated in a series of video-recorded interviews.

¶ 3 J.M.'s interviews with Detective Weaver and a forensic interviewer occurred on January 21 and January 30, 2014, respectively. During these interviews, J.M. said John Swietlicki, her mother's then-fiancé, had been having regular sexual contact with her since she was approximately eight years old. The contact included vaginal touching, oral sex, and vaginal intercourse. She claimed that the most recent encounters had occurred earlier that month—January 2014—while J.M.'s mother was on a business trip.

¶ 4 J.M. said Swietlicki sometimes showed her pornography on his computers during these encounters. That pornography depicted "kids." She described how Swietlicki used a "black and gray flash drive" to transfer pornography from his desktop computer to his laptop. Swietlicki used the laptop so that he and J.M. could view the pornography in locations other than the room off their garage, where Swietlicki kept his desktop computer.

¶ 5 During Detective Weaver's interviews with J.M.'s mother, she corroborated various details surrounding J.M.'s allegations. For example, she acknowledged owning, and physically produced, lingerie matching the description of lingerie J.M. said Swietlicki had asked her to wear for him, and she confirmed the occurrence, travel route, and timing of a trip J.M. and Swietlicki took to California, which was one of the specific instances in which J.M. alleged abuse.

¶ 6 Although Swietlicki went into hiding shortly after the investigation began, he maintained contact with J.M.'s mother via text messages. J.M.'s mother said Swietlicki had asked her to send him photographs of the room off the garage. Swietlicki gave J.M.'s mother the password to his desktop computer located there, but she discovered the computer had been wiped clean.

¶ 7 She also disclosed that Swietlicki's only current source of income was unemployment benefits and that his behavior during their five-year relationship suggested he had no other liquid assets to speak of.

¶ 8 A consent search of the couple's house revealed Swietlicki's laptop was missing.

¶ 9 The district attorney filed sexual assault charges against Swietlicki and the court issued a nationwide warrant for his arrest. In March 2014, Deputy Jorgenson—a DCSO deputy assigned to the U.S. Marshals Task Force in Colorado—asked Deputy Clauss, a U.S. Marshal stationed in Wisconsin, to investigate whether Swietlicki was staying with relatives in Wisconsin. Deputy Clauss conducted surveillance on multiple relatives' addresses and decided to interview Swietlicki's cousin, Chad Saegert, first.[1] On March 18, 2014, Clauss went to Saegert's home and spoke with him.

¶ 10 Saegert said he'd had no contact with Swietlicki for approximately two years. However, after Deputy Clauss explained the charges against Swietlicki and notified Saegert that harboring a fugitive and lying to law enforcement are crimes, Saegert revealed Swietlicki was sleeping in Saegert's bedroom. Deputy Clauss then arrested Swietlicki and took him to a local jail.

¶ 11 At Deputy Jorgenson's request, Clauss returned to Saegert's home forty-five to ninety minutes later to ask about Swietlicki's vehicle. Saegert invited Clauss inside the house, where two other relatives were then present. Saegert pointed to a laptop sitting on a table and said the laptop was Swietlicki's.[2]

¶ 12 Deputy Clauss immediately called Deputy Jorgenson, who in turn contacted Detective Weaver, to ask about the laptop. At Weaver's behest, Clauss seized the laptop because of J.M.'s statements concerning child pornography. Weaver and Jorgenson brought Swietlicki and the laptop to Colorado after Swietlicki was cleared for extradition.

1. The cousin's surname is spelled variously throughout record. We use the spelling from Deputy Clauss's arrest reports.

2. Saegert also pointed out a cellphone, which was seized along with the laptop. The trial court's suppression order applied to both the laptop and the cellphone, but the People have asked us to review the order with respect to the laptop alone. Accordingly, we do not address the cellphone.

DCSO later obtained a warrant, searched the laptop, and found child pornography on it. The People brought additional charges against Swietlicki based on this discovery.

¶ 13 Swietlicki moved to suppress all evidence found on the laptop. The trial court granted the motion, finding that the police lacked probable cause to seize the laptop. The court further found both the plain view and exigent circumstances exceptions to the warrant requirement inapplicable.

¶ 14 The People appeal under section 16–12–102(1), C.R.S. (2014), and C.A.R. 4.1.

## II. Standard of Review

¶ 15 "When reviewing a suppression order, we defer to the trial court's findings of fact if they are supported by competent evidence in the record." *People v. Sotelo*, 2014 CO 74, ¶ 18, 336 P.3d 188, 191. "We review the trial court's legal conclusions de novo and reverse if the trial court applied an erroneous legal standard or came to a conclusion of constitutional law that is not supported by the factual findings." *Id.*

## III. Analysis

¶ 16 We begin by discussing the Fourth Amendment as it applies to warrantless seizures of containers. We next analyze the plain view exception to the warrant requirement in this context. We conclude that the warrantless seizure of Swietlicki's laptop did not violate the Fourth Amendment[3] because it was justified under the plain view exception.

### A. Warrantless Seizures of Containers Under the Fourth Amendment

¶ 17 The Fourth Amendment to the United States Constitution prohibits "unrea-

sonable searches and seizures" of personal property. U.S. Const. amend. IV. Warrantless seizures of personal property are presumptively unreasonable, and hence invalid, under the Fourth Amendment. *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *People v. Gothard*, 185 P.3d 180, 183 (Colo.2008). This general rule holds true where the property seized is a closed container the contents of which remain concealed. *United States v. Place*, 462 U.S. 696, 700–01, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see also Horton v. California*, 496 U.S. 128, 133–34, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Jacobsen*, 466 U.S. 109, 113–14, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). We have previously characterized computers as containers for purposes of search and seizure law. *E.g., People v. Gall*, 30 P.3d 145, 153 (Colo.2001) (finding "container rationale" of prior Fourth Amendment cases "equally applicable to nontraditional, technological 'containers'" such as the laptop computers at issue there); *cf. People v. Herrera*, 2015 CO 60, ¶ 31, 357 P.3d 1227, 1232–33 (analogizing a text message folder to a closed container). However, because the Fourth Amendment demands only reasonableness, the warrant requirement applicable to such container seizures is subject to "certain reasonable exceptions." *See Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011).

¶ 18 The People argue that one such exception—plain view—applies here.[4]

### B. The Plain View Exception Justified Seizing the Laptop

¶ 19 Under the plain view exception, a warrantless seizure of a container is reason-

---

**3.** The trial court granted Swietlicki's motion to suppress under both the Fourth Amendment to the United States Constitution and Article II, Section 7, of the Colorado Constitution, and the People couch their argument in terms of both provisions. Although we occasionally have recognized differences in scope between the two provisions, *e.g., Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm'n*, 218 P.3d 326, 333–34 (Colo.2009), they are coextensive for purposes of this case, *see id.* at 333 ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and

seizures."). Thus, for simplicity, we reference only the Fourth Amendment in this opinion; however, our decision applies equally to Article II, Section 7.

**4.** The People also argue that the exigent circumstances exception to the warrant requirement applies in this case. However, because our conclusion with respect to the plain view exception is dispositive, we do not address exigent circumstances.

able for Fourth Amendment purposes if police observed the container in plain view and if the seizure satisfies three requirements: (1) the police were lawfully in the position from which they viewed the container, (2) the incriminating nature of the container was immediately apparent, and (3) the police had a lawful right of access to the container. *See Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *People v. Koehn,* 178 P.3d 536, 537 (Colo.2008).

¶ 20 The trial court found, and Swietlicki concedes, that the first and third requirements were satisfied but decided that the incriminating nature of the laptop was not immediately apparent. We disagree.

### 1. "Immediately Apparent" Means Probable Cause

¶ 21 Both Swietlicki and, to a lesser extent, the trial court emphasize the phrase "immediately apparent" in analyzing plain view. Thus, before turning to the merits, we take this opportunity to clarify the "immediately apparent" language first enunciated in *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion), and frequently reiterated in our plain view cases. A naked reading of this phrase could fairly lead to the conclusion that, for the incriminating nature of an object to be "immediately apparent," the seizing officer must experience a split-second revelation—a product not of thought but of reflex—in which he *knows,* at the moment he lays eyes upon the object, that the object is incriminating. But more than three decades of jurisprudence conclusively forecloses such an interpretation.

¶ 22 Instead, the Supreme Court has long equated this language to probable cause. *E.g., Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130. We have done the same. *E.g., Herrera,* ¶ 26, 357 P.3d at 1231. More specifically, what has been required is that the seizing officer have "probable cause to associate the item with criminal activity without conducting a further search." *People v. Glick,* 250 P.3d 578, 585 (Colo.2011); *accord Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130; *United States v. Gordon,* 741 F.3d 64, 71 (10th Cir. 2014). *See also* 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.11(d), at 1028 (5th ed. 2012) ("It must be emphasized that the 'immediately apparent' requirement relates only to probable cause, not certainty. That is, if the police are able to establish probable cause that the object is a fruit, instrumentality or evidence of a crime without [searching it], this is all that is required....").

¶ 23 In *Texas v. Brown,* the Court explicitly disapproved contrary interpretations, noting first that "the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary," before holding that probable cause is all that the "immediately apparent" prong requires. 460 U.S. 730, 741–42, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (citations omitted); *id.* at 748–50, 103 S.Ct. 1535 (Stevens, J., concurring in judgment) (agreeing that probable cause is the applicable standard).

¶ 24 Even before *Brown* was announced, this court arrived at the same conclusion, stating that the immediately apparent requirement "clearly implies that justification for the warrantless seizure is nothing more and nothing less than probable cause to believe that the article to be seized is connected with criminal behavior." *People v. Franklin,* 640 P.2d 226, 229 (Colo.1982). Over time, we have retained the "immediately apparent" language and added the interchangeable term "reasonable belief" to the mix. *See, e.g., People v. Alameno,* 193 P.3d 830, 834 (Colo.2008) ("[P]olice must have had a reasonable belief that the evidence seized was incriminating. This ... requirement is met if the incriminating nature was 'immediately apparent' to the officer, which means that the officer had probable cause to associate the item with criminal activity without conducting a further search." (citing *People v. Pitts,* 13 P.3d 1218, 1222 (Colo.2000))). Nonetheless, the clear import of our plain view cases is that the "immediately apparent" requirement of the plain view exception means nothing more than the police must possess probable cause without conducting a further search. *See, e.g., Herrera,* ¶ 26, 357 P.3d at

1231; *People v. Brant,* 252 P.3d 459, 464 (Colo.2011); *Glick,* 250 P.3d at 585; *People v. Smith,* 13 P.3d 300, 308 (Colo.2000); *People v. Dumas,* 955 P.2d 60, 64 n.9 (Colo.1998).

¶ 25 In sum, the second prong of the plain view exception requires only that the seizing officer have probable cause to associate the object with criminal activity without conducting a further search. Neither the "immediately apparent" nor "reasonable belief" phrasing carries independent meaning.

### 2. Deputy Clauss Had Probable Cause to Seize the Laptop

¶ 26 We now consider whether Deputy Clauss had probable cause in this case. The trial court determined that Deputy Clauss lacked probable cause to seize Swietlicki's laptop. The People argue the fellow officer rule imputed the police's collective knowledge to Clauss and that such collective knowledge established probable cause. We agree with the People.

### a. The Fellow Officer Rule Applied

¶ 27 "The fellow officer rule provides that a law enforcement officer who does not personally possess a sufficient basis to [take action] nevertheless may do so if (1) he acts at the direction [of] or as a result of communications with another officer, and (2) the police as a whole possess a sufficient basis to [take the action]." *People v. Arias,* 159 P.3d 134, 139 (Colo.2007); *see also Grassi v. People,* 2014 CO 12, ¶ 13, 320 P.3d 332, 336 ("[T]he fellow officer rule operates to impute information that the police possess as a whole to an individual officer."). The rule

"allow[s] law enforcement agencies to work together as a team," *Arias,* 159 P.3d at 139, and "reflects the 'realities of modern police work,' ... recognizing that different officers who perform distinct duties are nevertheless working collaboratively in the same case," *Grassi,* ¶ 17, 320 P.3d at 337 (quoting *People v. Hazelhurst,* 662 P.2d 1081, 1087 (Colo. 1983)). When the scope of an investigation expands to include officers not at the scene of an alleged crime, the rule "operates to integrate those outside officers and make them part of the coordinated investigation." *Id.* at ¶ 14, 320 P.3d at 336.

¶ 28 We have applied the fellow officer rule to find probable cause for (1) an arrest, *Hazelhurst,* 662 P.2d at 1086–87, (2) a search warrant, *People v. Reed,* 56 P.3d 96, 100 (Colo.2002), and (3) a blood draw, *Grassi,* ¶¶ 23–24, 31, 320 P.3d at 338, 340. We see no reason why it should not apply to plain view seizures too. *See id.* at ¶ 15 n. 7, 320 P.3d at 336 n. 7 (noting that the fellow officer rule applies equally to arrests and searches "[because] both scenarios require probable cause"); *Arias,* 159 P.3d at 139 (stating generally that "[t]he fellow officer rule may be used to find ... probable cause"); *see also People v. Jauch,* 2013 COA 127, ¶ 36, —— P.3d —— (finding "no principled reason" to exclude plain view seizures from the scope of the fellow officer rule).[5]

¶ 29 Turning to the facts of this case, then, the fellow officer rule provided Deputy Clauss with probable cause to seize Swietlicki's laptop if (1) he acted at the direction of or as a result of communications with anoth-

---

5. Federal courts have regularly applied the rule, which they call the "collective knowledge" doctrine, to find probable cause for plain view seizures. *See, e.g., United States v. Conlan,* 786 F.3d 380, 384, 388 & n. 17 (5th Cir.2015) (upholding plain view seizure of laptop and cellphones by an officer lacking probable cause where detective who instructed the officer to seize the laptop and cellphones had probable cause); *United States v. Banks,* 514 F.3d 769, 776 (8th Cir.2008) (upholding plain view seizure of defendant's gun case, based on probable cause to believe the case held a gun and was therefore evidence of the crime of being a felon in possession of a gun, where seizing officers did not know defendant was a felon but another officer with whom the seizing officers were communicating did know defen-

dant was a felon); *United States v. Wells,* 98 F.3d 808, 810 (4th Cir.1996) (same, except involving a gun instead of a gun case); *United States v. Menon,* 24 F.3d 550, 562–63 (3d Cir.1994) (upholding plain view seizure of documents where seizing officer did not recognize the documents' evidentiary character but brought them to a different officer in the house who did recognize their evidentiary character); *United States v. Rose,* 695 F.2d 1356, 1358–59 (10th Cir.1982) (upholding plain view seizure of barrel ends cut off submachine guns where officer who first discovered them did not know what they were but asked other officers who then recognized them as potential evidence of a crime); *Jauch,* ¶ 37 (collecting cases).

er officer, and (2) the police as a whole possessed probable cause to seize the laptop. *Arias,* 159 P.3d at 139. The first requirement is clearly established here. Clauss called the Colorado officers, was told to seize the laptop, and then seized it—this sequence of events epitomizes "act[ing] at the direction [of] or as a result of communications with another officer." *See id.*

¶ 30 Swietlicki's appeal to the "pursuant to a coordinated investigation" alternative phrasing of the first prong in *Grassi* does not change our conclusion. *See Grassi,* ¶ 21, 320 P.3d at 338 ("[T]he fellow officer rule imputes information ... if (1) [the] officer acts pursuant to a coordinated investigation...."). For one, *Grassi* explicitly couples the two phrases: the requirement that an officer act "at the direction [of] or as a result of communications with another officer" simply "ensur[es] that he acted pursuant to a coordinated investigation." *Id.* at ¶ 15, 320 P.3d at 336 (first alteration in original). And for another, even if more were required, the record here would suffice. After Deputy Jorgenson contacted him, Deputy Clauss located several of Swietlicki's relatives, conducted surveillance on multiple residences, gathered and analyzed information to form the opinion that Saegert was the relative most likely to be harboring Swietlicki, and then found and arrested Swietlicki. These facts refute Swietlicki's contention that Clauss "was not involved in the investigation" and more than satisfy the first prong of the fellow officer rule.

¶ 31 Because the first requirement was met, the fellow officer rule justified Deputy Clauss's plain view seizure of the laptop so long as the police as a whole had probable cause to associate the laptop with criminal activity. We now consider whether they did.

b. **Police Had Probable Cause to Believe the Laptop Contained Child Pornography**

¶ 32 A prolonged warrantless seizure of a closed container is unreasonable unless police have "probable cause to believe that [the] container holds [or itself is] contraband or evidence of a crime." *See Place,* 462 U.S. at 701, 103 S.Ct. 2637. "Probable cause is a flexible standard deriving from a common sense concept of reasonableness." *People v. Grazier,* 992 P.2d 1149, 1153 (Colo. 2000). Because "[p]robability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," *Gall,* 30 P.3d at 149, probable cause is measured not by "a 'more likely true than false' level of certitude," but by a "common-sense, nontechnical standard of reasonable cause to believe," *People v. Melgosa,* 753 P.2d 221, 225 (Colo.1988) (quoting *Brown,* 460 U.S. at 742, 103 S.Ct. 1535 (plurality opinion)). It is determined based on an objective assessment of the totality of the facts and circumstances known at the time of the seizure. *See People v. Coates,* 266 P.3d 397, 400 (Colo.2011); *Grazier,* 992 P.2d at 1154. Based on this assessment, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

¶ 33 Before the seizure in this case, J.M. disclosed that Swietlicki (1) had been sexually assaulting her for approximately four years, beginning when she was eight years old and ending about two months before the seizure of the computer; (2) sometimes showed her child pornography on his desktop and laptop computers during the assaults; and (3) used a "black and gray flash drive" to transfer the pornography from the desktop to the laptop so the pornography could be viewed in different locations. The trial court found J.M.'s statements reliable.

¶ 34 These facts supplied probable cause to believe child pornography would be found on Swietlicki's laptop in Colorado. *See United States v. Vallimont,* 378 Fed.Appx. 972, 974 (11th Cir.2010) (per curiam) (finding that child-victim's statements that defendant had child pornography on his computer supplied probable cause to believe the computer held child pornography). And Swietlicki does not argue to the contrary. It is illegal to possess child pornography. § 18–6–403(3)(b.5), C.R.S. (2015); *see also* 18 U.S.C. § 2252 (2012); Wis. Stat. § 948.12 (2015).

¶ 35 The question, then, is whether this probable cause remained sufficient to seize a laptop belonging to Swietlicki that was locat-

ed not in Colorado, but in Wisconsin. *See People v. Kerst*, 181 P.3d 1167, 1172 (Colo. 2008) (explaining, in the context of assessing the affidavit underlying a warrant, that probable cause requires a nexus between the "criminal activity, the things to be seized, and the place [where the things are found]"). We conclude it did.

¶ 36 Unlike the trial court, we do not view the officers' lack of a physical description of the laptop or their inability to conclusively prove the laptop came from Colorado as precluding probable cause. At the time of the seizure, in addition to J.M.'s disclosures, police had the following information: (1) the laptop in Wisconsin belonged to Swietlicki, (2) the laptop on which J.M. viewed child pornography was missing from Swietlicki's Colorado residence, (3) Swietlicki's desktop computer had been wiped clean, (4) Swietlicki had asked J.M.'s mother to send him pictures of the room off the garage, and (5) Swietlicki had limited disposable funds.

¶ 37 These facts support a fair probability that child pornography would be found on the laptop in Wisconsin. First, this information supplied "reasonable cause to believe" the Wisconsin laptop and Colorado laptop were one and the same. *See Melgosa*, 753 P.2d at 225. Police knew the Wisconsin laptop belonged to Swietlicki and that the laptop he had possessed in Colorado was missing from his Colorado residence. They also knew Swietlicki's only source of income was unemployment disbursements—a fact that suggests he had limited disposable funds with which to purchase a new computer. Although it is possible that Swietlicki bought a new laptop between his flight from Colorado and the seizure in Wisconsin, the alterna-tive possibility that he simply brought the Colorado laptop with him reflects a more "common-sense conclusion[ ] about human behavior." *See People v. Crippen*, 223 P.3d 114, 117 (Colo.2010) (explaining that the concept of probable cause is founded on such conclusions).

¶ 38 Second, police reasonably could have believed Swietlicki had not removed child pornography from his laptop prior to the time it was seized. Swietlicki's actions in wiping clean his desktop computer and asking for photographs of the room off the garage suggest he had attempted to quickly remove incriminating materials from Colorado before taking flight. Taking the laptop with him to Wisconsin would have furthered this objective without necessitating the immediate deletion of files from the laptop itself. Moreover, we agree with the People that the nature of the suspected criminal activity—possession of child pornography— supplements the reasonableness of such a belief. *See id.* at 118 (explaining that the question of whether information supporting probable cause has become stale must account for factors including "the nature of the criminal activity at issue"). The Tenth Circuit, for instance, has repeatedly noted that "common sense and the cases" support the observation that possessors of child pornography hoard and rarely dispose of their materials because the illegality of and social stigma surrounding such materials make them difficult to obtain. *See, e.g., United States v. Burkhart*, 602 F.3d 1202, 1206–07 (10th Cir.2010); *United States v. Potts*, 586 F.3d 823, 828–29, 830 (10th Cir.2009); *United States v. Perrine*, 518 F.3d 1196, 1205–06 (10th Cir.2008).[6] Although insufficient on its

---

6. Indeed, there is a "widespread view among the courts ... that 'collectors ... of child pornography value their sexually explicit materials highly, "rarely if ever" dispose of such material, and store it "for long periods" in a secure place....'" *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir.2010) (quoting *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997), and collecting cases). In the context of assessing probable cause, numerous federal and state courts have observed that these characteristics make it uniquely probable that a possessor of child pornography will retain his or her illicit material. *See, e.g., United States v. Prideaux–Wentz*, 543 F.3d 954, 958–59 (7th Cir.2008) (recognizing that "the staleness argument takes on a different meaning in the context of child pornography because of the fact that collectors ... rarely, if ever, dispose of their collections," but finding that the "at least four year[] old" information relied on in that case was too stale to support probable cause); *United States v. Riccardi*, 405 F.3d 852, 860–61 (10th Cir.2005) (finding probable cause for seizure of computer based on five-year-old Kinkos receipt located near the computer because it showed defendant had ability and desire to convert photos to digital format and because of child pornography collector characteristics); *State v. Shields*, 308 Conn. 678, 69 A.3d 293, 297, 301–03 (2013) (finding

own, this recognized propensity is the type of "practical consideration[ ]" that may be accounted for in ascertaining probable cause. *See Mendez v. People,* 986 P.2d 275, 280 (Colo.1999).

¶ 39 Based on our objective assessment of the facts and circumstances known at the time of the seizure, we conclude that the seizure of Swietlicki's laptop was supported by probable cause. We further conclude that the fellow officer rule imputed knowledge of this probable cause to Deputy Clauss. Since Clauss observed the laptop in plain view from a lawful vantage point, had probable cause to believe the laptop was associated with criminal activity, and had a lawful right of access to the laptop, the plain view exception rendered his warrantless seizure of the laptop reasonable for Fourth Amendment purposes.

## IV. Conclusion

¶ 40 We hold that the warrantless seizure of Swietlicki's laptop was reasonable for Fourth Amendment purposes because it was justified under the plain view exception to the warrant requirement. Consequently, we reverse the trial court's suppression order and remand for further proceedings.

---

probable cause for seizure of computers based in part on child pornography collector characteristics, including the fact that "[child pornography] images ... are stored on the computers of the sender and receiver, and are rarely destroyed or deleted because of their emotional and economic value"); *State v. Fuller,* 332 P.3d 937, 948–49 (Utah 2014) (finding probable cause for search warrant based on prior internet search, stating "[w]hen a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that images of child pornography are likely to be hoarded by persons interested in those materials" (alteration in original) (quoting *United States v. Irving,* 452 F.3d 110, 125 (2d Cir.2006))).