2017 CO 8

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

John Martin COX, II, Defendant-
Appellee.

Supreme Court Case No. 16SA187

Supreme Court of Colorado.

February 6, 2017

**510**

Attorneys for Plaintiff-Appellant: Michael J. Rourke, District Attorney, Nineteenth Judicial District, Brynne Gant, Deputy District Attorney, Greeley, Colorado

Attorneys for Defendant-Appellee: Douglas K. Wilson, Public Defender, James Merson, Deputy Public Defender, Greeley, Colorado

JUSTICE EID delivered the Opinion of the Court.

¶1 Trooper Joseph Ynostroza stopped John Cox for driving in the left lane. During the stop, the Trooper observed several factors that led him to suspect that there might be evidence of illegal activity in the trunk of the vehicle, including the fact that his canine alerted to the odor of drugs in the trunk. The Trooper opened the trunk where he found, among other things, two white trash bags with multiple sealed packages of marijuana. The trial court granted Cox's motion to suppress the evidence, finding that it is "unreasonable for an officer to rely on the alert from a canine trained to detect any amount of marijuana, including legal amounts." The trial court concluded that, based on the remaining factors to be considered, the Trooper did not have probable cause to search the trunk. The People now bring this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2016), and C.A.R. 4.1.

¶2 We now reverse and hold that Trooper Ynostroza had probable cause under the totality of the circumstances. Importantly, the trial court issued its order before we issued our opinion in People v. Zuniga, 2016 CO 52, 372 P.3d 1052, where we said that although Amendment 64 of the Colorado Constitution allows possession of small amounts of marijuana,

> a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity. Hence, we hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination.

¶ 23, 372 P.3d at 1059. Under Zuniga, then, the trial court erred in disregarding the canine alert as part of the totality of circumstances.

¶3 Considering the canine alert as part of the totality of the circumstances, coupled with the fact that Cox had two cell phones on the car seat, exhibited unusual nervousness, and gave an inconsistent explanation regarding his travels, we hold there was probable cause to search the trunk of Cox's vehicle. We therefore reverse the trial court's order suppressing the evidence found during the search and remand for further proceedings.

**I.**

¶4 Trooper Ynostroza testified[1] that on the afternoon of January 5, 2016, he observed a lone vehicle driven by Cox traveling in the left lane on Interstate 76. The Trooper did not observe Cox pass any other vehicles or notice any obstructions that would require him to be in the passing lane, yet Cox remained in the left lane for the two miles that Trooper Ynostroza followed him. Because he believed Colorado law prohibits traveling in the left lane under such circumstances, the Trooper stopped Cox.

¶5 Cox provided Trooper Ynostroza with his driver's license and rental car agreement.

1. The following facts come from the trial court's order or the transcript of the suppression hear-   ing.

The Trooper called Cox's information into dispatch and quickly received confirmation that his license was clear and valid. The Trooper noticed that Cox was unusually nervous; he based this conclusion on the fact that Cox had beads of sweat on his face, was stuttering, and was continuously licking his lips. Trooper Ynostroza testified that this was unusual and "not consistent with the average or the normal consistent violator that we stop day in and day out." He also saw two cell phones on the passenger seat. According to the Trooper, the presence of two cell phones and his other observations "led to the possibility that . . . [Cox] could be trafficking illegal contraband."

¶6 Trooper Ynostroza asked Cox to exit the car and come to the rear of the vehicle. Outside the car, Cox told the Trooper that he had rented the car in Sunnydale, California, on Christmas Day, which was eleven days earlier, and had driven "straight through" on his way to Bellevue, Nebraska. The Trooper was familiar with the drive from California to Nebraska and believed that Cox's explanation of his travel plans left eight days of driving unaccounted for. The Trooper examined the rental car agreement and noticed that the car was four days overdue. Cox said that he would call the company, and that it had his credit card information on file. Trooper Ynostroza asked dispatch to contact the rental company.

¶7 While waiting for information from the company, the Trooper asked Cox if he would mind opening the trunk, and Cox refused but acknowledged that the items in the trunk belonged to him. Over Cox's objection, Trooper Ynostroza had his canine unit, Lobo, conduct a free air sniff. Lobo is trained to alert to the odor of marijuana, methamphetamine, heroin, and cocaine, but the Trooper testified that Lobo's signal is the same regardless of the substance or quantity of the substance.

¶8 Lobo alerted on the trunk, and Trooper Ynostroza opened it, where, among other things, he found two white trash bags with multiple sealed packages of marijuana. Soon thereafter, dispatch reported back that the vehicle was due to the rental company but that Cox could extend the agreement.

¶9 Cox was charged with possession with intent to manufacture or distribute marijuana or marijuana concentrate, distribution of marijuana or marijuana concentrate, and improper usage of a passing lane. Cox asked the trial court to suppress the evidence obtained during the search of the vehicle's trunk because Trooper Ynostroza did not have probable cause to support the search. The trial court agreed and granted his motion. According to the trial court, it was error for the Trooper to rely upon the canine alert because the canine would alert to both legal and illegal amounts of marijuana. The court continued, "It stands to reason that possession of a legal substance cannot form the basis of finding probable cause to search for contraband." (Citing, inter alia, Commonwealth v. Overmyer, 469 Mass. 16,11 N.E.3d 1054, 1058 (2014)). The trial court concluded that the remaining factors—the fact that Cox gave inconsistent information regarding his travel plans, had two cell phones on the passenger seat, and exhibited unusual nervousness—did not amount to probable cause.[2]

¶10 The People filed this interlocutory appeal pursuant to section 16-12-102(2) and C.A.R. 4.1.[3]

## II.

¶11 The People argue that the trial court erred by concluding that Trooper Ynostroza did not have probable cause to search

---

**2.** Cox also argued that the initial basis for the stop was unlawful and that the scope of the stop was unlawfully extended twice. However, the trial court disagreed, finding that the initial basis for the stop was lawful and that extending the stop was justified. Cox again raises these issues in this appeal, in addition to opposing the People on the probable cause issue. However, we do not consider these other issues raised by Cox because a defendant cannot appeal a decision in favor of

the prosecution under C.A.R. 4.1. People v. Zuniga, 2016 CO 52, ¶ 11 n.3, 372 P.3d 1052, 1056 n.3 (citing People v. Gothard, 185 P.3d 180, 183 (Colo. 2008)).

**3.** The People certified that this appeal was not taken for the purposes of delay and that the evidence suppressed is a substantial part of the proof in the People's case. See C.A.R. 4.1(a).

the trunk of the vehicle and suppressing the fruits of that search. We agree. Whether probable cause exists is a mixed question of law and fact. Zuniga, ¶ 13, 372 P.3d at 1056 (citing People v. Coates, 266 P.3d 397, 400 (Colo. 2011)). "When reviewing a trial court's suppression order, we give deference to the trial court's findings of fact but review its application of law de novo." Id. (quoting People v. Vaughn, 2014 CO 71, ¶ 9, 334 P.3d 226, 229).

¶12 The United States Constitution and Colorado Constitution guarantee the right of the people to be free from "unreasonable searches and seizures." U.S. Const. amend. IV, XIV; Colo. Const. art. II, § 7. To satisfy the reasonableness requirement, law enforcement officials must obtain a warrant prior to a search, unless it falls within an exception. Zuniga, ¶ 14, 372 P.3d at 1056 (citing Mendez v. People, 986 P.2d 275, 279 (Colo. 1999)). One such exception applies to automobiles: law enforcement officials may search an automobile without a warrant "if they have probable cause to believe that the automobile contains evidence of a crime." Id. (quoting People v. Hill, 929 P.2d 735, 739 (Colo. 1996)).

¶13 A law enforcement official has probable cause to conduct a search "when the facts available to the officer would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." Id. at ¶ 16, 372 P.3d at 1057 (alterations omitted) (quoting Florida v. Harris, 568 U.S. 237, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013)). Probable cause does not require certainty or even that it be more likely than not that a search will reveal evidence. People v. Swietlicki, 2015 CO 67, ¶ 32, 361 P.3d 411, 417. Rather, probable cause is a "nontechnical standard," id. and a "common-sense concept," Zuniga, ¶ 16, 372 P.3d at 1057 (citing Mendez, 986 P.2d at 280).

¶14 The probable cause determination requires a court to consider the "totality of the circumstances" to determine whether a "fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." Id. (quoting Mendez, 986 P.2d at 280). The standard requires the court to do more than consider all of the individual circumstances of a case in isolation from the others. Rather, a court must consider the "[f]acts in combination." People v. Schall, 59 P.3d 848, 852 (Colo. 2002); see Maryland v. Pringle, 540 U.S. 366, 372 n.2, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("The court's consideration of the money in isolation, rather than as a factor in the totality of the circumstances, is mistaken in light of our precedents."). The possibility that an innocent explanation may underlie a particular circumstance "may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's usefulness outright and require it to be disregarded." Zuniga, ¶ 20, 372 P.3d at 1058.

¶15 We conclude that under the totality of the circumstances, Trooper Ynostroza had probable cause to search the vehicle's trunk. Four factors, in combination, support this conclusion.

¶16 First, Lobo the canine alerted on the trunk. The trial court dismissed this factor, concluding that it is "unreasonable for an officer to rely on the alert from a canine trained to detect any amount of marijuana, including legal amounts." The court continued, "It stands to reason that possession of a legal substance cannot form the basis of finding probable cause to search for contraband." (Citing, inter alia, Overmyer, 11 N.E.3d at 1058).

¶17 Importantly, the trial court adopted this reasoning before we issued Zuniga,[4] where we addressed a similar suppression order that cited to Overmyer and reasoned that because the canine alerted to both legal and illegal amounts of marijuana, the alert had to be disregarded. Id. at ¶ 19, 372 P.3d at 1057–58. In Zuniga, however, we "disagree[d] with this reasoning." Id. at ¶ 20, 372 P.3d at 1058. We observed that our precedent "is consistent with the principle that, while a possible innocent explanation may impact the weight given to a particular fact

---

4. The trial court issued its suppression order in this case on May 31, 2016. We issued Zuniga on June 27, 2016.

in a probable cause determination, it does not wholly eliminate the fact's worth and require it to be disregarded." Id. at ¶ 23, 372 P.3d at 1059. "Applying that principle to the trial court's order," we said that

> while Amendment 64 [of the Colorado Constitution] allows possession of one ounce or less of marijuana, a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, the odor of marijuana is still suggestive of criminal activity. Hence, we hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination.

Id. As in Zuniga, we conclude that, contrary to the trial court's approach, the canine alert in this case "suggested that illegal drugs were present in the vehicle" and that such an alert is a factor that should be considered as part of the totality of circumstances. Id. at ¶ 29, 372 P.3d at 1060.

¶18 Another factor weighing in the probable cause determination is that Trooper Ynostroza noticed that Cox was unusually nervous. We have recognized that it is natural for drivers to be nervous when they are stopped by a law enforcement officer. Id. at ¶ 27, 372 P.3d at 1059. Here, however, Trooper Ynostroza did not merely notice that Cox was nervous; rather, he was "unusually nervous," and the Trooper testified that his nervousness was "not consistent with the average or the normal consistent violator that we stop day in and day out." The Trooper based this on his observations that Cox "had beads of sweat on his nose, he stuttered when speaking, and he continuously licked his lips." As in Zuniga, we conclude that this unusual nervousness "leads to a reasonable inference that illegal activity was ongoing during the traffic stop." Id., 372 P.3d at 1060.

¶19 Third, Trooper Ynostroza observed an inconsistency in Cox's account of his travels. Cox told the Trooper that he had driven "straight through" from Sunnydale, California, to Bellevue, Nebraska, though Cox had rented his vehicle in Sunnydale eleven days before. Trooper Ynostroza was familiar with the drive from California to Nebraska and believed that Cox's explanation left eight days of driving unaccounted for. Such inconsistencies in a person's account of where he or she has been traveling can give rise to probable cause. See United States v. Edwards, 632 F.3d 633, 640 (10th Cir. 2001) (finding probable cause supported warrantless arrest when, among other things, defendant "offered only implausible, inconsistent explanations of how he came into possession of" money); United States v. Garcia, 179 F.3d 265, 269–70 (5th Cir. 1999) (finding probable cause existed when, among other things, "the defendants responded to the agents' questions with obviously false and inconsistent explanations"); People v. Omwanda, 2014 COA 128, ¶ 24, 338 P.3d 1145, 1149 (finding probable cause existed when, among other things, defendant gave inconsistent and conflicting explanations of recent whereabouts and reasons for being in Colorado).

¶20 The trial court noted that Cox's claim that he drove "straight through" from Sunnydale to Bellevue, and the fact that he rented the vehicle eleven days earlier, are "potentially inconsistent and potentially consistent." The court continued that it did "find it odd that a person would rent a car on Christmas Day, then remain in their hometown for eight or nine days with a rental car, before departing to drive 'straight through' to their final destination." But, the trial court found this factor to be "mitigated" based on the fact that the Trooper did not ask follow up questions to determine whether Cox could clear up any inconsistency. We are aware of no requirement that an officer ask clarifying questions regarding a person's inconsistent explanation of his or her travel. Instead, we simply observe that such inconsistencies may give rise to "a reasonable inference that [the defendant was] attempting to conceal illegal conduct from the Trooper." Zuniga, ¶ 26, 372 P.3d at 1059 (considering the two men's "remarkably disparate accounts" of their travels in Colorado in the totality of the circumstances).

¶21 Finally, Trooper Ynostroza saw two cell phones in the vehicle, which he testified is common among drug traffickers. Courts have recognized the connection between multiple cell phones and the possibility of drug trafficking. See, e.g., United States v. Green-

wood, 594 Fed.Appx. 486, 489 (10th Cir. 2014) (stating that multiple cellphones are typical of drug distributors); United States v. Guerrero–Sanchez, 412 Fed.Appx. 133, 139–40 (10th Cir. 2011) (finding that possession of two cell phones, among other factors, although all innocent in isolation, together create reasonable articulable suspicion of illegal conduct). But the trial court offered up two innocent explanations for the presence of two cell phones in the car—that someone else left the second phone, or that Cox had a work and personal cell phone—and faulted the Trooper for not following up with Cox so that he could supply such a "plausible explanation." Again, we are aware of no requirement that an officer ask clarifying questions regarding the presence of two cell phones. Additionally, as with the canine alert, we note that the possibility of an innocent explanation "does not destroy the fact's usefulness outright and require it to be disregarded." Zuniga, ¶ 20, 372 P.3d at 1058. Here, the trial court erred in finding that the presence of two cell phones did not constitute a "suspicious fact[ ]."

¶22 Considering these facts together, there was a fair probability that searching the trunk would reveal contraband or evidence of a crime; this is all that probable cause requires. See Harris, 133 S.Ct. at 1055 ("A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present.... All we have required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (Alterations omitted)). Accordingly, we reverse the trial court's conclusion that the search of the trunk was not supported by probable cause.[5]

### III.

¶23 Because Trooper Ynostroza had probable cause, the trial court erred in suppressing the evidence found during the search. Therefore, we reverse the trial court's order suppressing evidence obtained from the search and remand for further proceedings.

JUSTICE HOOD dissents, and JUSTICE GABRIEL joins in the dissent.

JUSTICE HOOD, dissenting.

¶24 In People v. Zuniga, 2016 CO 52, 372 P.3d 1052, I dissented based on my belief that the circumstances there, including Lobo's alert, fell short of establishing probable cause to search Zuniga's car. I respectfully dissent here, too, because I believe these circumstances fall even shorter.

¶25 The majority correctly states the Fourth Amendment's warrant requirement, the automobile exception to that requirement, and the probable cause standard. Under the probable cause standard, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." See People v. Swietlicki, 2015 CO 67, ¶ 32, 361 P.3d 411, 417 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (emphasis added).

¶26 Of course, the fair probability standard for probable cause is more demanding than is the reasonable suspicion standard required for the lesser intrusion caused by a temporary investigatory stop. See People v. Polander, 41 P.3d 698, 703 (Colo. 2001) ("Reasonable suspicion is a less demanding standard, however, not only in the sense that it can be established with information that is different in quantity or content from that required for probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

¶27 In evaluating whether there is probable cause to support the warrantless search of a person's vehicle, we must be careful not to conflate probable cause and reasonable suspicion, both in describing the applicable legal standard and in implementing it. Without such vigilance, we run the risk that little more than conjecture may give license to the government to rummage through, and seize,

---

**5.** As in Zuniga, because we conclude that probable cause was established by the totality of the circumstances, we need not consider whether the dog alert alone would establish probable cause in this case. Zuniga, ¶ 30 n.6, 372 P.3d at 1060 n.6.

an individual's personal belongings in derogation of the Fourth Amendment.

¶28 The majority concludes that there was a fair probability that the trooper here (as it happens, the same trooper who handled Lobo in Zuniga) would find contraband or evidence of a crime, based on the confluence of four circumstances: (1) Lobo alerted; (2) Cox was "unusually nervous"; (3) Cox's assertion that he had driven "straight through" from California was inconsistent with his having rented the car eleven days earlier; and (4) Cox was travelling alone but had two cell phones in the vehicle. I examine each of these circumstances in turn.

¶29 As I explained in Zuniga, Lobo's alert isn't terribly helpful in determining probable cause in the wake of Amendment 64. See Zuniga, ¶¶ 48–51, 372 P.3d at 1063–64 (Hood, J., dissenting). Although Lobo alerts for heroin, cocaine, and methamphetamine, he also alerts for any quantity of marijuana. That's problematic when possessing an ounce of marijuana is now legal in Colorado. And while I agree with the majority that the alert should not be totally disregarded, I cannot agree that it "suggested that illegal drugs were present in the vehicle." Maj. op. ¶ 17 (quoting Zuniga, ¶ 29, 372 P.3d at 1060 (majority opinion)). That inference is unwarranted because we know that Lobo is capable of giving a false positive, at least under the only source of law on which the prosecution relies in this case—Colorado law. See Zuniga, ¶ 50, 372 P.3d at 1063–64 (Hood, J., dissenting). Moreover, notably absent here is the trooper noticing the strong odor of raw marijuana, a fact which the majority emphasized in Zuniga. See id. at ¶ 28, 372 P.3d at 1060 (majority opinion).

¶30 And yes, unusual nervousness is suspicious. But here, again, I wouldn't give it much weight. As the majority recognizes, nervousness is a natural reaction to being pulled over by the police. Maj. op. ¶ 18. Even when a trooper can document indications that a driver is "unusually nervous"—sweating, stuttering, licking lips—how is the trooper to know what the driver is like when he's not unusually nervous? See Zuniga, ¶ 37, 372 P.3d at 1061 (Hood, J., dissenting) ("[U]nless the police officer has had significant knowl-edge of a person, it is difficult, even for a skilled police officer, to evaluate whether a person is acting normally for them or nervously." (quoting United States v. Simpson, 609 F.3d 1140, 1147–48 (10th Cir. 2010))).

¶31 Next, the majority considers an "inconsistency" in Cox's account to the trooper. The majority recounts, "Cox told the Trooper that he had driven 'straight through' from Sunnydale, California, to Bellevue, Nebraska, though Cox had rented his vehicle in Sunnydale eleven days before." Maj. op. ¶ 19. This was internally inconsistent, the reasoning goes, because the trooper knew that it takes only a couple of days to drive "straight through" from California to Nebraska. But this reasoning seems thin for at least two reasons. First, there is no inherent inconsistency. Cox could have rented the car eleven days earlier, used the rental car for a week or so in California, and then driven "straight through" to Nebraska. In Zuniga, by contrast, there were two people in the car; the driver said they'd been on the road four days, but the passenger said it had been only two. Zuniga, ¶¶ 3–4, 372 P.3d at 1055 (majority opinion). Both tales could not be true. Therefore, there was a genuine inconsistency suggestive of criminal activity. Second, given how little information the trooper elicited here, how much does the driver's thumbnail sketch of his journey really tell us? Precious little, it seems to me. And while the trooper may have had no obligation to seek clarification or elaboration, it also means that he had to play with the cards he was dealt. His probable cause analysis should have been confined to the meager information he had obtained.

¶32 Finally, the majority observes that Cox had two cell phones in the car, and it points out, "Courts have recognized the connection between multiple cell phones and the possibility of drug trafficking." Maj. op. ¶ 21. The majority recognized that there are a number of potential innocent explanations for the presence of two cell phones, like having a business phone and a personal phone. But it noted, as it had earlier with regard to Lobo's ambiguous alert, that the "possibility of an innocent explanation 'does not destroy the fact's usefulness outright and require it to be

disregarded.' " Id. (quoting Zuniga, ¶ 20, 372 P.3d at 1058). True enough, but I'm wary of the majority's persistent—almost thematic—use of this point to reach probable cause here. Just because a fact shouldn't be disregarded doesn't mean it should be given much regard. So it is with the second phone.

¶33 Still, is the whole somehow greater than the sum of its parts? Do these relatively innocuous circumstances in combination demonstrate probable cause? I don't think so. In the end, what we have here is a motorist pulled over for driving too long in the passing lane on an interstate highway. He happens to have a couple of cell phones in his car. His story doesn't quite add up. He strikes the trooper as unusually nervous, so maybe he's hiding something. Maybe not. Maybe he's just twitchier than the average person stopped by the police. These unremarkable circumstances are followed by a dog alert that is almost meaningless under current Colorado law. If the "fair probability" required for probable cause really means something more than reasonable suspicion, what we have here isn't enough for probable cause, even when taking the facts in combination.

¶34 The Tenth Circuit decision in United States v. Wood, 106 F.3d 942 (10th Cir. 1997), is instructive. There, a trooper pulled over a car for speeding. Id. at 944. The driver seemed "extremely nervous"—his hands trembled, he breathed rapidly, and he cleared his throat several times. Id. He said he had rented the car in San Francisco, but the rental papers said he had rented it in Sacramento, and it was due back the next day. Id. His travel plans, too, were unusual—though he was an out-of-work Kansas painter, he claimed to have flown one-way to California for two weeks and then rented a car to drive back. Id. On top of everything, the driver had a previous drug-related arrest. Id. The Tenth Circuit determined the trooper lacked reasonable suspicion to detain the vehicle to wait for a canine search, never mind probable cause. Id. at 948 ("To sanction a finding that the Fourth Amendment permits a seizure based on such a weak foundation would be tantamount to subjecting the traveling public to virtually random seizures,

inquisitions to obtain information which could then be used to suggest reasonable suspicion, and arbitrary exercises of police power.").

¶35 While this factually similar case from the Tenth Circuit provides only persuasive precedent, it exposes how the highly ambiguous facts in this case cannot bear the weight the majority places on them. There's a gulf between the analyses of the majority here and the Wood court, and Lobo can't fill it.

¶36 Therefore, I respectfully dissent.

I am authorized to state that JUSTICE GABRIEL joins in this dissent.