23CA2014 Peo in Interest of AT 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2014 City and County of Denver Juvenile Court No. 22JV30831 Honorable Pax Moultrie, Judge The People of the State of Colorado, Appellee, In the Interest of A.T., A.A., T.A., G.K.L.A., and A.K.L-L.A., Children, and Concerning A.A. and T.T., Appellants. JUDGMENT AND ORDER AFFIRMED Division VI Opinion by JUDGE FREYRE Lipinsky and Schutz, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Kerry Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Tierney A. Shea, Assistant City Attorney, Denver, Colorado, for Appellee Debra W. Dodd, Guardian Ad Litem Padilla Law, P.C., Beth Padilla, Mancos, Colorado, for Appellant A.A. James West, Office of Respondent Parent’s Counsel, Longmont, Colorado, for Appellant T.T. 
 1 ¶ 1 In this dependency and neglect action, T.T. (mother) and A.A. (father) appeal the judgment adjudicating A.K.A, G.K.A., A.S.A., T.A.A., and A.T. (the children) dependent and neglected. Mother also appeals the dispositional order. We affirm. I. Background ¶ 2 The Denver Department of Human Services (the Department) received a referral while the family was staying in a shelter and opened a voluntary, non-court case. Two months later, the Department filed a petition in dependency and neglect, alleging that the family was asked to leave the shelter and there were concerns about physical abuse, domestic violence, and substance abuse. The family was from Micronesia and was struggling with their adjustment to the language and cultural norms of the United States. Both parents denied the allegations in the petition and requested a jury trial. ¶ 3 The juvenile court conducted a jury trial in this case eight months after the Department filed the petition. At the trial, the Department alleged and the jury found that: • the children lacked proper parental care through father’s actions or omissions; 
 2 • the children’s environment was injurious to their welfare; • mother and father failed or refused to provide proper or necessary subsistence, education, medical care, or any other care for A.S.A., T.A.A., and A.T.; and • the children were homeless or without proper care through no fault of mother and father. Although the Department alleged that (1) mother had mistreated or abused A.T. and (2) the children lacked proper parental care through mother’s actions or omissions, the jury disagreed. ¶ 4 Based on the jury’s verdicts, the juvenile court adjudicated the children dependent and neglected. Following a contested dispositional hearing, the juvenile court adopted treatment plans for the parents. II. Jury Instructions ¶ 5 Mother contends that the juvenile court erred by declining to give the jury her tendered instruction based on the presumption from Troxel v. Granville, 530 U.S. 57 (2000). We disagree. A. Standard of Review ¶ 6 A juvenile court must correctly instruct the jury on the law applicable to a case, and if the juvenile court meets this obligation, 
 3 it has broad discretion over the style and form of instructions. People in Interest of J.G., 2016 CO 39, ¶ 33. We review jury instructions de novo to determine whether, taken as a whole, they accurately informed the jury of the applicable law. Id. However, we review a court’s decision to give or not give a particular instruction for an abuse of discretion. Id. A ruling on jury instructions is an abuse of discretion only when the ruling results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair. Id. B. Additional Background ¶ 7 As relevant here, mother proposed an instruction stating that the jury “must presume all of the Respondent Parents’ decisions for the children were made in the children’s best interest unless you conclude that the Petitioner has presented evidence to overcome that presumption by a preponderance of the evidence.” Mother cited Troxel as support for her proposed instruction. ¶ 8 The Department and the guardian ad litem (GAL) objected. At a pretrial conference, mother argued — seemingly in response to written objections not in the record — that the proposed instruction should be permitted because “it [was] an accurate statement of the law and [the Department’s] objection is that adjudication does not 
 4 ask the jury to determine if a parent is fit. The instruction actually doesn’t contain the word fit, just simply states that until adjudication occurs, parents are presumed to have that fitness and to act in their children’s best interest.” ¶ 9 The juvenile court agreed the instruction was a correct statement of the law but expressed concern about “confusion of the issues and also perhaps a reading into the instruction that it applies an additional element that has to be proven at trial.” The juvenile court then declined to include the proposed instruction. ¶ 10 Mother also proposed amendments to the Department’s proffered instruction about the burden of proof. The pattern instruction states that “the plaintiff has the burden of proving its claim(s) by a preponderance of the evidence” and “the defendant has the burden of proving each of their affirmative defense(s) by a preponderance of the evidence.” CJI—Civ. 3:1 (2023) (general burden of proof instruction for civil cases). Mother argued that “any reference to the fact that the parents have a burden of proof improperly shifts the burden at trial” and would be confusing to the jury. The juvenile court agreed, “[s]ince the burden remains on the Petitioner and the Juvenile Rules do not require specific pleading of 
 5 defenses or affirmative defenses, the court finds it appropriate to modify the pattern instruction regarding burden of proof to remove reference to affirmative defenses or defenses to prevent any confusion for the jury.” C. Analysis ¶ 11 Mother contends that, like the presumption of innocence in a criminal trial, parents are entitled to a presumption that their “decisions are made in the best interests of the children.” She reasons that an instruction regarding the presumption would have been particularly important here because of the family’s cultural background. Specifically, mother contends that, had her proposed instruction been included, evidence of her and father’s discipline choices would not have been as impactful on the jury and would have helped the jury understand how cultural considerations informed the parents’ disciplinary practices. ¶ 12 Mother also argues that the proposed instruction should have been included because it properly stated the law and did not alter the Department’s burden of proof. The juvenile court agreed that the proposed instruction was a correct statement of the law from Troxel. Nonetheless, the juvenile court excluded the proposed 
 6 instruction for other reasons. The court reasoned that the proposed instruction altered the burden of proof because it required the Department to prove “an additional element,” and it would confuse the jury. ¶ 13 While we agree that mother’s tendered instruction correctly stated the law, we nevertheless conclude that it duplicated other instructions and was therefore unnecessary. The totality of the instructions as given properly informed the jury of the Department’s burden and complied with the statute. Therefore, we discern no abuse of discretion. See J.G., ¶ 33.
1 ¶ 14 Furthermore, mother’s concerns about the jury incorrectly placing the burden of proof on the parents were addressed in other jury instructions, including amendments to the instructions that mother proposed and the juvenile court accepted. See People v. Asberry, 172 P.3d 927, 933 (Colo. App. 2007) (“There is no reversible error if the jury instructions, read as a whole, adequately inform the jury of the law.”). 1 We need not, and do not, decide whether a juvenile court would abuse its discretion by providing a jury instruction that explains the Troxel presumption in an adjudicatory trial. See People in Interest of N.G., 20212 COA 131, ¶¶ 35-36, 40. 
 7 ¶ 15 We conclude that the juvenile court did not abuse its discretion by declining to give mother’s proposed jury instruction. III. Juror T ¶ 16 Father contends that the juvenile court erred by denying his challenge for cause to Juror T. We discern no error. A. Applicable Law and Standard of Review ¶ 17 A challenge for cause is entrusted to the sound discretion of the juvenile court, and we will not disturb a court’s decision to deny a challenge for cause absent an abuse of discretion. Day v. Johnson, 232 P.3d 175, 178 (Colo. App. 2009). We defer to the juvenile court’s assessment of a prospective juror’s responses because the juvenile court is uniquely positioned to evaluate the demeanor and body language of the prospective juror. Id. ¶ 18 Under C.R.C.P. 47(e)(6) and (7), a court may remove a juror for cause based on an “unqualified opinion or belief as to the merits of the action” or “the existence of a state of mind in the juror evincing enmity against or bias to either party.” However, a court need not excuse a juror for cause when, “after explanation and rehabilitative efforts, the court believes that [the juror] can render a fair and impartial verdict based on the instructions given by the judge and 
 8 the evidence presented at trial.” People v. Clemens, 2017 CO 89, ¶ 16. B. Additional Background ¶ 19 Based solely on juror questionnaires, the parties agreed to dismiss nineteen jurors for cause. Father challenged four more jurors based on their responses which, he argued, indicated they could not be fair. The juvenile court denied those challenges, but encouraged the parties to “ask pointed questions” if those jurors made it to the box during voir dire. ¶ 20 After voir dire, father challenged an additional six jurors, including Juror T, for cause. Father raised concerns that these jurors would place the burden of proof on the parents and be unwilling to follow the law. In response, the juvenile court provided additional instruction to the jurors, including that the Department had the burden of proof, and asked them if, knowing the burden, it would “still [be] a struggle for any of you if you don’t hear anything from any of the parents?” No juror “indicated that is a struggle.” Similarly, when the juvenile court asked if anyone was “unwilling to follow the law regardless of whether you agree with that,” no juror indicated an unwillingness to follow the law. 
 9 ¶ 21 In declining to dismiss Juror T and five others for cause, the juvenile court found that, after “hearing the answers and considering all of the voir dire together . . . we’ve adequately questioned the jurors as to all these things and so understanding and noting the objection from parent counsel, I’m passing the panel for cause.” C. Analysis ¶ 22 Father points to Juror T’s agreement with another juror’s response to counsel’s question, “even though [she] would be instructed that the burden of proof is over here, [she] would say, yeah, I need to see some more from these guys over here” and such juror’s statement that she “would have a hard time not hearing from” the parents. But Juror T also affirmed that she could follow the law and did not have questions about how to do that. And when, after further instruction, the juvenile court asked the jurors about their willingness to follow the law regardless of whether they agreed with it, Juror T did not indicate an unwillingness to do so. ¶ 23 While Juror T — and others — made somewhat conflicting statements during voir dire, we must defer to the juvenile court’s assessment of the prospective jurors’ responses. See Day, 232 P.3d 
 10 at 178; see also People v. Lefebre, 5 P.3d 295, 301 (Colo. 2000) (“A prospective juror who makes a statement suggesting actual bias may nonetheless sit on the jury if she agrees to set aside any preconceived notions and make a decision based on the evidence and the court’s instructions.”), overruled on other grounds by People v. Novotny, 2014 CO 18. Under these circumstances, we perceive no abuse of discretion by the juvenile court in denying the challenge for cause to Juror T and allowing her to remain in the jury pool. See Carrillo v. People, 974 P.2d 478, 485-86 (Colo. 1999) (The abuse of discretion standard “recognizes the trial court’s unique role and perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing those judgments based on a cold record.”). IV. Amendments to the Petition ¶ 24 Father next contends, somewhat paradoxically, that the juvenile court erred by both (1) allowing the petition to be amended before the adjudicatory trial and (2) not requiring the petition to be amended after the adjudicatory trial. We disagree with both contentions. 
 11 A. Relevant Law ¶ 25 A petition alleging dependency or neglect “shall set forth plainly the facts which bring the child within the court’s jurisdiction.” § 19-3-502(2), C.R.S. 2023. Because an adjudication must be based on existing circumstances and relate to the status of the child at the time of the adjudicatory hearing, the Children’s Code anticipates that “additional or different” matters may be raised by the evidence at an adjudicatory trial. See § 19-3-505(4)(a), C.R.S. 2023; see also J.G., ¶ 38. In such circumstances, the Children’s Code directs that a juvenile court “may proceed immediately to consider the additional or different matters raised by the evidence if the parties consent” and “[i]n such event, the court, on the motion of any interested party or on its own motion, shall order the petition to be amended to conform to the evidence.” § 19-3-505(4)(a), (b). If the amendment “results in a substantial departure” from the original petition, the juvenile court must continue the hearing. § 19-3-505(4)(c). ¶ 26 Colorado Rule of Civil Procedure 15(b) is analogous. It provides that, “[i]f evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court 
 12 may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.” C.R.C.P. 15(b) ¶ 27 Pleadings are to be construed so as to do substantial justice, and their purpose is merely the giving of notice of the issues to be litigated. Belfor USA Grp., Inc. v. Rocky Mountain Caulking & Waterproofing, LLC, 159 P.3d 672, 678 (Colo. App. 2006). Thus, amendment of the pleadings to conform to the evidence should be granted liberally to allow litigation to be determined on the merits and not be limited to the strict parameters of the pleadings. People v. Mountain States Tel. & Tel. Co., 739 P.2d 850, 852 (Colo. 1987). ¶ 28 Whether to grant leave to amend a petition is entrusted to the juvenile court’s discretion, and we will not disturb a decision to grant leave to amend absent an abuse of that discretion. Polk v. Denver Dist. Ct., 849 P.2d 23, 25 (Colo. 1993). B. The Amended Petitions ¶ 29 The Department filed a first amended petition that added allegations of dental neglect for two of the children. A few days 
 13 prior to the adjudicatory trial, which occurred eight months after the initial filing, the Department submitted a second amended petition that added allegations regarding continued “concerns . . . related to the respondent parents’ drinking,” including that the parents appeared under the influence of alcohol during meetings with the caseworker and at a family time session where “father admitted to being under the influence and had to be asked to leave.” ¶ 30 Father argued that the juvenile court should not permit the Department to file the second amended petition, stating (1) the Department already used “its one amendment permitted” by C.R.C.P. 15(a); (2) amending the petition three business days before the start of the scheduled jury trial was insufficient notice; and (3) the amendment was not timely because the family time incident occurred a month before the Department sought leave to file the second amended petition. ¶ 31 The juvenile court ordered that the second amended petition be received after considering both C.R.C.P. 15(a) and section 19-3-505(4). In so doing, the juvenile court found “that allegations in the Second Amended Petition are not a substantial departure 
 14 from the allegations in the original petition,” and that the “parties have been on notice of the concerns about parental substance use,” including through witness disclosures and a stipulation that required both parents to engage in substance monitoring. Finally, the juvenile court found that continuing the adjudicatory trial, which had already been reset twice and which was occurring nine months after the filing of the original petition, was not in the children’s best interests. ¶ 32 Given the multiple ways that father was given notice of the Department’s concerns about his substance use before the petition was amended, and the significant passage of time between the filing of the petition and the adjudicatory trial, we cannot say that the juvenile court’s decision to allow the amendment was unreasonable or unfair. The original petition and the second amended petition recited the statutory grounds for determining dependency and neglect as to all the children and stated plainly that the Department had concerns about physical abuse, domestic violence, and substance abuse. And father agreed to provide random urinalysis — clean of all substances — as part of a family time stipulation four months before the adjudicatory trial. 
 15 ¶ 33 Notably, father appears to concede that the amendments were not a substantial departure from the original petition because he did not object on those grounds either before the juvenile court or on appeal. See People in Interest of A.E.L., 181 P.3d 1186, 1193 (Colo. App. 2008) (affirming order allowing the filing of an amended petition two days before the adjudicatory hearing where there was no showing of a substantial departure from the original allegations). ¶ 34 Instead, father argues that C.R.C.P. 15(a) requires the juvenile court to analyze and make specific findings that “justice so requires” the amendment of a petition. We are not aware of, nor does father provide, support for the proposition that a trial court errs by not expressly incanting this language. ¶ 35 Lastly, father argues that the juvenile court’s decision to authorize the filing of the second amended petition violated his right to due process. Because he did not object to the filing on this ground in the juvenile court, we decline to address it now. People in Interest of M.B., 2020 COA 13, ¶ 14. C. Amendments After the Adjudicatory Trial ¶ 36 Father also contends that the juvenile court erred by not requiring the Department to further amend the petition after the 
 16 trial because the Department “presented evidence relating to three topics that were not alleged in [any] petition.” We conclude that no such amendment was required because the three topics that father challenges were not presented to the jury, he did not object to testimony related to those topics, and the juvenile court properly instructed the jury. ¶ 37 First, father claims that the Department’s opening statement improperly presented evidence of “inappropriate acts in front of other families” at the shelter where father, mother, and the children resided. Father objected during the opening statement on the grounds that neither the original nor the second amended petitions contained allegations of inappropriate contact between the parents. The juvenile court ruled that testimony about the parents’ conduct would be permitted “if it goes to the issues of why they were asked to leave the shelter.” Nonetheless, the juvenile court instructed the jury that “what is said in opening statements and all other statements made by the attorneys are not evidence.” Absent a showing to the contrary, we presume that the jury understood and followed the juvenile court’s instructions. See Perez v. People, 2015 CO 45, ¶ 43. 
 17 ¶ 38 Additionally, the juvenile court sustained father’s objection to the shelter program supervisor’s testimony about “inappropriate behavior” between mother and father. The juvenile court did not allow specific testimony describing the alleged inappropriate behavior. ¶ 39 Therefore, the jury never heard evidence of the “inappropriate acts” that father now argues should not have been admitted. ¶ 40 Second, father contends that the juvenile court should not have allowed the county attorney to argue that “evidence of father’s warrants was in the petition.” But father does not provide, nor could we locate, any reference in the record showing that the county attorney referred to the warrants in the presence of the jury. ¶ 41 Third, father claims that his “rights to due process and a fair proceeding were impacted” by a school official’s testimony “regarding the children’s excessive absences.” A.T., A.S.A., and T.A.A.’s school principal testified about the school’s efforts to help the children come to school and provided specific numbers for their absences and tardies. However, father did not object to this testimony, either on the grounds that it was not included in the original or second amended petitions or that it affected his due 
 18 process rights. Therefore, we will not consider this issue further. People in Interest of T.E.R., 2013 COA 73, ¶ 30 (generally, issues not raised in the trial court will not be considered on appeal). V. Testimony and Evidence of Father’s Criminal Matters ¶ 42 Next, father contends that the juvenile court erred by permitting evidence of his criminal history and custodial status. We disagree. A. Relevant Law and Standard of Review ¶ 43 Evidence of prior acts is only admissible in an adjudicatory hearing under certain circumstances. While evidence of prior acts is not admissible “to prove the character of a person in order to show that he acted in conformity therewith,” a “parent’s past conduct and current circumstances” are relevant to a prediction of whether “it is likely or expected that the parent will fail to provide proper care for the child in the future.” People in Interest of A.W., 2015 COA 144M, ¶ 21 (comparing CRE 404(b) with People in Interest of S.N., 2014 COA 116, ¶ 17). ¶ 44 Because a child’s situation “cannot be viewed in a vacuum,” the evidence of whether a child is dependent or neglected at the time of adjudication “must be considered in the context of the . . . 
 19 parent’s prior behavior.” People v. D.A.K., 198 Colo. 11, 15, 596 P.2d 747, 749-50 (1979). For that reason, a jury may properly use a parent’s prior acts to predict whether a child would be dependent or neglected in the future. See A.W., ¶¶ 22-23; see also People in Interest of G.E.S., 2016 COA 183, ¶ 15 (a dependency and neglect proceeding is preventative as well as remedial). ¶ 45 A child may not be found dependent and neglected “solely because the child’s parent has criminal convictions or faces criminal charges.” People in Interest of D.M.F.D., 2021 COA 95, ¶ 26. However, a parent’s convictions and pending charges may support a determination that a child is dependent and neglected when there is “a link between the convictions and pending charges and the factors identified in section 19-3-102.” Id. at ¶ 24. For these reasons, CRE 404(b) does not apply to evidence of prospective harm to the child introduced at an adjudicatory hearing. A.W., ¶ 23. Moreover, otherwise relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.” CRE 403. But “unfair prejudice” does not mean prejudice from the legitimate probative force of evidence. People v. Gibbens, 905 P.2d 604, 608 (Colo. 1995). 
 20 ¶ 46 We review evidentiary rulings, including rulings allowing or prohibiting witness testimony, for an abuse of discretion. People in Interest of M.V., 2018 COA 163, ¶ 52, overruled on other grounds by People in Interest of E.A.M. v. D.R.M., 2022 CO 42. An error is harmless unless “it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.” Id. at ¶ 66. B. Criminal History ¶ 47 The juvenile court denied father’s request for a “blanket prohibition” of testimony or other evidence related to his criminal history and pending criminal charges. In so doing, the juvenile court found that father’s Denver Police Department (DPD) and Colorado Bureau of Investigation (CBI) records were admissible and emphasized that CRE 403 required a showing that the probative value of such evidence be “substantially outweighed” by the danger of unfair prejudice. However, the juvenile court required a portion of father’s DPD record to be redacted and required further information about a portion of father’s CBI record before determining whether it, too, should be redacted. 
 21 ¶ 48 In addition to the DPD and CBI records, which the juvenile court admitted without further objection, the jury heard evidence that the Department considered father’s criminal history in its assessment, including charges for child abuse and domestic violence, and that father was denied housing because of a criminal background check that noted “a fight in the past.” The jury also heard from father’s probation officer, who testified that father was on probation for a misdemeanor domestic violence incident and that his probation was being revoked, in part, because he had multiple additional police contacts and a new domestic violence charge. Father did not object to this testimony. In fact, father elicited testimony from the caseworker about the impact of “the prior criminal histories of the parents.” ¶ 49 Because the jury was tasked with deciding whether father could provide proper care for his children, we conclude that father’s criminal history was relevant. And we note that the juvenile court redacted information from the written criminal history documents in response to father’s objections. Beyond asserting the general prejudice inherent in such evidence, father does not explain why the probative value of this evidence was outweighed by the danger 
 22 of unfair prejudice. Accordingly, we discern no abuse of discretion in the juvenile court’s decision to admit evidence concerning father’s criminal history. C. Custodial Status 1. Additional Background ¶ 50 In its original petition, the Department alleged that father had an open warrant. Throughout the proceeding, the parties noted that father had active warrants. ¶ 51 At the end of the first day of the adjudicatory trial, and outside the presence of the jury, father was taken into custody on two warrants. The juvenile court ordered the jail staff to bring father to court the next day in street clothes if he did not bond out. ¶ 52 At the beginning of the second day, father asked “that the parties be precluded from mentioning that he’s in custody” because the information was “not relevant to a child safety concern.” Following argument from all parties, the juvenile court found that multiple criminal charges were included in the original and second amended petitions. The juvenile court next found that father’s custodial status was “potentially relevant” because (1) one of the charges for which he had been taken into custody related to one of 
 23 the children and (2) father’s custodial status may potentially go to his availability to parent. The juvenile court noted that it also had to consider whether the information was unduly prejudicial. Although the juvenile court found it would “allow limited testimony” regarding father’s custodial status, the jury did not hear any information about father being in custody that day. ¶ 53 On the third day of the trial, the Department called father’s probation officer to testify. Father asked that the probation officer be precluded from mentioning that father was in custody because his in-custody status was “highly prejudicial.” The juvenile court found that, although “anything that’s negative is potentially prejudicial,” father’s in-custody status had probative value and was not unfairly prejudicial. The probation officer then testified that father was on probation for a domestic violence misdemeanor; father had at least three new probation violations; and a revocation of his probation was pending. The probation officer did not testify that father had been arrested pursuant to a warrant. ¶ 54 Father testified on the final day of the adjudicatory trial. On direct examination, he testified that a consequence of not complying with probation was going to jail. On cross-examination, the GAL 
 24 asked father if he was incarcerated that day. Father’s counsel objected, “reiterating the objection that we have been making . . . since [father] has been in custody.” The GAL argued that father’s in-custody status went to his ability to care for the children. The juvenile court agreed and overruled the objection but encouraged father’s counsel to “do what you need to do on cross or redirect.” Father went on to testify that he was incarcerated that day, but also could be bonded out that day; that he made efforts to clear his warrants before the hearing; and that his extended family was raising the money to bond him out. 2. Analysis ¶ 55 Father argues that permitting testimony regarding his custodial status deprived him of due process and a fair proceeding. We note that he made no due process objection to the juvenile court, nor does he explain on appeal how this testimony implicated his due process rights. Therefore, we do not consider this argument further. See M.B., ¶ 14; People v. Ujaama, 2012 COA 36, ¶ 37 (explaining that issues are unpreserved when the grounds raised on appeal are different from those raised below). Nevertheless, we discern no abuse of discretion by the juvenile court in admitting 
 25 this testimony because it was relevant to the jury’s determination of whether it was “likely or expected that the parent will fail to provide proper care for the child in the future.” People in Interest of A.W., 2015 COA 144M, ¶ 21. VI. Mother’s Disposition ¶ 56 Mother contends that the juvenile court erred by entering a dispositional order that was not final for purposes of appeal and by adopting an inappropriate treatment plan. We discern no basis for reversal. A. Additional Background ¶ 57 At the dispositional hearing, mother stated, “there are things that [mother] is willing to agree to, and there are things that she does contest” with regard to her treatment plan. The juvenile court called for a recess to allow “the attorneys to talk to each other about what modifications they might be requesting.” ¶ 58 When the juvenile court recalled the matter, father stated that he was “not in disagreement with any of the objectives as a whole” with regard to his treatment plan but that he wanted fourteen days to suggest modifications. 
 26 ¶ 59 Through counsel, mother made what she called a “similar record.” Specifically, mother requested “the opportunity to kind of tighten up some of the language and the [duplication] in the action steps” to ensure that the plan was streamlined and not overwhelming. Mother represented that she would provide suggested modifications. ¶ 60 The juvenile court found that the Department’s proposed treatment plan “can serve as an interim treatment plan” and ordered the parties to file proposed amendments within fourteen days. The juvenile court subsequently issued a written dispositional order, adopting the treatment plan and finding that the Department’s proposed plan was appropriate. ¶ 61 Mother failed to timely submit proposed amendments to the treatment plan. B. Analysis ¶ 62 First, we disagree with mother’s contention that the juvenile court’s dispositional order created ambiguity about her ability to appeal. Even though the juvenile court used the phrase “interim treatment plan,” it’s “Adjudicatory and Dispositional Hearing Order for Respondent Mother” was the first dispositional order. Indeed, it 
 27 is “the initial dispositional order adopting a treatment plan [that] constitutes a ‘decree of disposition’ and renders the adjudication and the initial dispositional order final for purposes of appeal.” People in Interest of C.L.S., 934 P.2d 851, 854 (Colo. App. 1996) (emphasis added) (citations omitted). ¶ 63 Next, we decline to address mother’s contention that the treatment plan that the juvenile court adopted was not appropriate or that the juvenile court failed to make specific findings about the appropriateness of the plan because we conclude mother waived these issues. Waiver is the intentional relinquishment of a known right. People v. Rediger, 2018 CO 32, ¶ 39. When a party waives an issue below, we do not review it on appeal. Id. at ¶ 40. ¶ 64 Here, when given the opportunity to provide suggestions or modifications to the proposed treatment plan, mother never did so. Nor did she object to the juvenile court’s order adopting the Department’s proposed treatment plan as an “interim treatment plan” or the subsequent written order adopting the Department’s proposed treatment plan. ¶ 65 Similarly, mother never asked the juvenile court to make specific findings regarding the appropriateness of each element of 
 28 the treatment plan. Section 19-3-508(1), C.R.S. 2023, directs the juvenile court to “approve an appropriate treatment plan,” and the juvenile court appropriately found that the treatment plan was “appropriate, related to the child’s needs, and reasonably calculated to render [mother] fit” within a reasonable time. VII. Ineffective Assistance of Counsel ¶ 66 Finally, mother claims that her counsel’s failure to object to the dispositional order amounted to ineffective assistance of counsel. We are not persuaded. ¶ 67 Divisions of this court have recognized that a parent’s statutory right to counsel includes the right to effective assistance of counsel. See People in Interest of A.R., 2018 COA 177, ¶ 37, aff’d on other grounds sub nom. A.R. v. D.R., 2020 CO 10; People in Interest of S.L., 2017 COA 160, ¶ 58; People in Interest of C.H., 166 P.3d 288, 290 (Colo. App. 2007). ¶ 68 To successfully make an ineffective assistance of counsel claim, a parent must show that (1) counsel’s performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel’s errors. A.R., ¶ 48; C.H., 166 P.3d at 291-92. 
 29 ¶ 69 An ineffective assistance of counsel claim must allege facts with sufficient specificity to be successful, including, for example, the expected names of witnesses to be called, the expected substance of testimony, and a clear explanation of how that testimony would demonstrate that trial counsel’s performance was outside the wide range of professionally competent assistance. See C.H., 166 P.3d at 291. ¶ 70 To show prejudice, the parent must show a reasonable probability that the outcome of the proceeding would have been different but for counsel’s deficient performance or unprofessional errors. A.R., ¶ 60. If the parent’s allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. See C.H., 166 P.3d at 291. In other words, a remand for an evidentiary hearing is only required if the parent’s allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. Id. ¶ 71 We will not remand the matter for an evidentiary hearing because mother’s allegations lack specificity. See id. Even assuming, without deciding, that counsel’s performance fell below the range of professionally competent assistance, mother has not 
 30 established that these alleged errors prejudiced her. As previously discussed, mother did not file a timely objections to the proposed treatment plan, and “treatment plans adopted at the dispositional stage are interlocutory and can be changed after periodic review by the court or by motion of a party” at any time during the proceedings. H.T., ¶ 24. VIII. Disposition ¶ 72 The adjudication judgment and dispositional order are affirmed. JUDGE LIPINSKY and JUDGE SCHUTZ concur.